COMMONWEALTH *vs.* JAMES F. ATENCIO
(and a companion case[1]).

Suffolk.     February 4, 1963. — March 28, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Homicide.* ˙ *Wanton or Reckless Conduct.   Joint Enterprise.   Proximate
     Cause.   Firearms.*

Conviction of two defendants upon indictments for involuntary man-
     slaughter was justified where evidence warranted findings that, after
     the defendants and the deceased had spent a day in a room drinking
     wine, the conversation turned to "Russian roulette," that the three played
     that "game" with a revolver having one cartridge in its cylinder, that
     each defendant in turn spun the cylinder, pointed the revolver at his
     head and pulled the trigger without the revolver firing, and that the sec-
     ond defendant to play then passed the revolver to the deceased, who
     spun its cylinder, put the revolver to his head, pulled the trigger, and
     died when the revolver fired.   [629–631]

Conviction of a defendant upon an indictment for carrying a revolver on
     his person in violation of G. L. c. 269, § 10, as amended through St. 1957,
     c. 688, § 23, was not warranted where it merely appeared that the de-
     fendant had temporary possession of the revolver during his turn at
     playing a "game" of "Russian roulette" with two companions in a
     room.   [631]

INDICTMENTS found and returned on November 8, 1961.

The cases were tried before *Noonan, J.*

*Ronald J. Chisholm* for the defendants.

*Alfred L. Bunai,* Assistant District Attorney, for the
Commonwealth.

WILKINS, C.J.    Each defendant has been convicted upon
an indictment for manslaughter in the death of Stewart E.
Britch and upon an indictment for illegally carrying a fire-
arm, namely a revolver, on his person in violation of G. L.
c. 269, § 10 (as amended through St. 1957, c. 688, § 23).[2]

---

[1] The companion case is entitled Commonwealth *vs.* James D. Marshall.

[2] "Whoever, except as provided by law, carries on his person, or carries on
his person or under his control in a vehicle, a firearm as defined in section
one hundred and twenty-one of chapter one hundred and forty, loaded or un-
loaded, without permission under sections one hundred and thirty-one or one

The cases, which arose out of a "game" of "Russian roulette," are here on appeals pursuant to G. L. c. 278, §§ 33A–33G, as amended, accompanied by a summary of the record, a transcript of the evidence, and assignments of error. The defendants argue assignments of error in the denial of motions for directed verdicts on each indictment, in the charge, and in the failure to give one of their requests for instructions.

Facts which the jury could have found are these. On Sunday, October 22, 1961, the deceased, his brother Ronald, and the defendants spent the day drinking wine in the deceased's room in a rooming house in Boston. At some time in the afternoon, with reference to nothing specific so far as the record discloses, Marshall said, "I will settle this," went out, and in a few minutes returned clicking a gun, from which he removed one bullet. Early in the evening Ronald left, and the conversation turned to "Russian roulette."

The evidence as to what happened consisted of testimony of police officers, who took statements of the defendants, and testimony of one defendant, Atencio. The evidence did not supply all the facts. For example, the source and ownership of the revolver were not made clear. The jury could have found that it was produced by the deceased and that he suggested the "game," or they might have found neither to be the fact. There was evidence that Marshall earlier had seen the revolver in the possession of the deceased, and that the latter handed it to Marshall, who put it in the bathroom under the sink. Later when the deceased accused him of stealing it, he brought it back from the bathroom, and gave it to the deceased. Any uncertainty is not of prime importance. The "game" was played. The deceased and Atencio were seated on a bed, and Marshall was seated on a couch. First, Marshall examined the gun, saw that it contained one cartridge, and, after spinning it on his arm,

hundred and thirty-one F of chapter one hundred and forty . . . shall be punished . . . ." General Laws c. 140, § 121 (as amended through St. 1960, c. 186), provides that " 'firearm' shall mean a pistol, revolver or other weapon of any description loaded or unloaded, from which a shot or bullet can be discharged and of which the length of barrel, not including any revolving, detachable or magazine breech, is less than eighteen inches.''

pointed it at his head, and pulled the trigger. Nothing happened. He handed the gun to Atencio, who repeated the process, again without results. Atencio passed the gun to the deceased, who spun it, put it to his head, and pulled the trigger. The cartridge exploded, and he fell over dead.

1. There is no controversy as to definition. Involuntary manslaughter may be predicated upon wanton or reckless conduct. *Commonwealth* v. *Bouvier,* 316 Mass. 489, 494, and cases cited. ''The essence of wanton or reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.'' *Commonwealth* v. *Welansky,* 316 Mass. 383, 399. Restatement: Torts, § 500.

We are of opinion that the defendants could properly have been found guilty of manslaughter. This is not a civil action against the defendants by the personal representative of Stewart Britch. In such a case his voluntary act, we assume, would be a bar. Here the Commonwealth had an interest that the deceased should not be killed by the wanton or reckless conduct of himself and others. *State* v. *Plaspohl,* 239 Ind. 324, 327. Such conduct could be found in the concerted action and coöperation of the defendants in helping to bring about the deceased's foolish act. The jury did not have to believe testimony that the defendants at the last moment tried to dissuade the deceased from doing that which they had just done themselves.

The defendants argue as if it should have been ruled, as matter of law, that there were three ''games'' of solitaire and not one ''game'' of ''Russian roulette.'' That the defendants participated could be found to be a cause and not a mere condition of Stewart Britch's death. It is not correct to say that his act could not be found to have been caused by anything which Marshall and Atencio did, nor that he would have died when the gun went off in his hand no matter whether they had done the same. The testimony does not require a ruling that when the deceased took the gun from Atencio it was an independent or intervening act

not standing in any relation to the defendants' acts which
would render what he did imputable to them.    It is an over-
simplification to contend that each participated in some-
thing that only one could do at a time.    There could be
found to be a mutual encouragement in a joint enterprise.
In the abstract, there may have been no duty on the defend-
ants to prevent the deceased from playing.    But there was
a duty on their part not to coöperate or join with him in
the "game."    Nor, if the facts presented such a case, would
we have to agree that if the deceased, and not the defend-
ants, had played first that they could not have been found
guilty of manslaughter.    The defendants were much more
than merely present at a crime.    It would not be necessary
that the defendants force the deceased to play or suggest
that he play.

We are referred in both briefs to cases of manslaughter
arising out of automobiles racing upon the public highway.
When the victim is a third person, there is no difficulty in
holding the drivers, including the one whose car did not
strike the victim (*Brown* v. *Thayer,* 212 Mass. 392), or in
whose car a victim was not a passenger.    *Nelson* v. *Nason,*
343 Mass. 220, 221.

In two cases the driver of a noncolliding car has been
prosecuted for the death of his competitor, and in both cases
an appellate court has ruled that he was not guilty of man-
slaughter.    In *Commonwealth* v. *Root,* 403 Pa. 571, the com-
petitor drove on the wrong side of the road head-on into an
oncoming truck and was killed.    The court held (p. 580)
that "the tort liability concept of proximate cause has no
proper place in prosecutions for criminal homicide and
more direct causal connection is required for conviction
. . . .    In the instant case, the defendant's reckless conduct
was not a sufficiently direct cause of the competing driver's
death to make him criminally liable therefor."    In *Thacker*
v. *State,* 103 Ga. App. 36, the defendant was indicted for the
involuntary manslaughter of his competitor in a drag race
who was killed when he lost control of his car and left the
highway.    The court said (p. 39) that the indictment "fails

to allege any act or acts on the part of the defendant which caused or contributed to the loss of control of the vehicle driven by the deceased, other than the fact that they were engaged in a race at the time.''

Whatever may be thought of those two decisions, there is a very real distinction between drag racing and ''Russian roulette.'' In the former much is left to the skill, or lack of it, of the competitor. In ''Russian roulette'' it is a matter of luck as to the location of the one bullet, and except for a misfire (of which there was evidence in the case at bar) the outcome is a certainty if the chamber under the hammer happens to be the one containing the bullet.

2. Each defendant excepted to the denial of a request to the effect that if he urged the deceased not to pull the trigger, the jury would be warranted in finding that the defendant did not show a reckless disregard of the deceased's safety, and would be warranted in finding him not guilty. We do not agree with the defendants' contention that the request was not given in substance. Very near the close of the charge the judge instructed the jury, ''If any one of these defendants abandoned or quit the roulette before it was completed, before the shot was fired, then, of course, he would not be responsible or guilty of the shooting.''

3. We are of opinion that the temporary possession of the revolver shown by the defendants during the game is not a carrying of a firearm on the person within the meaning of G. L. c. 269, § 10, as amended. The idea conveyed by the statute is that of movement, ''carries on his person or under his control in a vehicle.'' The motions for directed verdicts on the indictments for carrying a revolver on the person should have been granted.

4. The judgments on the indictments for manslaughter are affirmed. The judgments on the indictments for carrying a revolver on the person are reversed, and the verdicts on those indictments are set aside.

*So ordered.*