Footnote: Also see Commonwealth v. Smith, 3 D. & C. 3d 263 (1974).

## Commonwealth v. Schell

*James B. Martin,* and *William H. Platt, District Attorney,* for Commonwealth.

*W. Hamlin Neely* and *Aaron M. Matte,* of *Markowitz & Kirschner,* for defendants.

KOCH, *J.*, Specially Presiding, October 14, 1977 — Defendants, charged with recklessly endangering another person and criminal conspiracy, waived jury trial. At the conclusion of the Commonwealth's case, the trial judge overruled motions for a demurrer. Timely motions in arrest of judgment were filed subsequent to the entry of guilty verdicts on all changes. The post trial motions are before us for disposition.

The Commonwealth's evidence consisted primarily of statements made by each defendant to Lieutenants Carl and Kollar of the Emmaus Police Department on the date of the incident.

The evidence, taken in the light most favorable to the Commonwealth, established the following facts:

On June 23, 1975, defendants, together with decedent, Frank Kerr, were drinking beer in Kerr's apartment in the Borough of Emmaus. Late in the afternoon Schlaner brought into the apartment a web belt which had attached to it a knife, pockets containing bullets and a holster containing a .32 caliber Smith and Wesson revolver. The revolver had once been owned by Kerr, but had been given to Schlaner in a business transaction.

At about 5:00 p.m., either Kerr or Schell suggested that all of them participate in a game commonly described as "Russian Roulette" utilizing the .32 caliber revolver which contained seven cylinders in the firing chamber. To facilitate the playing of the "game" a single bullet was placed in a chamber.

The testimony reveals that Russian Roulette is played by placing a live cartridge in one of the chambers. Thereafter, the chamber is spun either

in a clockwise or counter-clockwise direction, after which the participant places the gun to his head and pulls the trigger.

While it is true that Schlaner and Heston stated that they did not wish to participate in the "game," it is clear that Schlaner placed the bullet in the chamber and handed the weapon to Heston who rotated the chamber until it was two or three spaces from the firing mechanism. Heston then handed the gun to Kerr who was blindfolded.* Kerr spun the chamber, pulled the trigger once, and finally shot himself in the head.

The testimony also reveals that Schell spun the chamber and handed the weapon to Schlaner who in turn removed the bullet, but replaced it when Schell stated, "If we are going to play this, let's play it right."

Defendants contend that they cannot be guilty of the offense of recklessly endangering the life of another person when that person voluntarily and intentionally agrees to engage in the conduct which creates the risk.

The statute in question, Act of December 6, 1972, P.L. 1482, 18 C.P.S.A. §2075, provides as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

The foregoing broad prohibition against the prescribed conduct is, like most of the provisions of the Crimes Code, 18 C.P.S.A. §101 et seq., based upon the Model Penal Code, Tentative Draft No. 9, pp. 86-87, which states: "[This Section] . . . estab-

---

* The blindfold, consisting of a towel, was produced by Kerr.

lishes a *general prohibition* of recklessly engaging in conduct which places or may place another person in danger of death or serious bodily injury. It does not require any particular person to be actually placed in danger, *but deals with potential risks,* as well as cases where a specific person actually is within the zone of danger. A section so drawn is obviously applicable to all specific situations of reckless conduct which have arisen in the past, as well as new situations which will arise in the future. For example, this statute would apply to persons who leave uncovered wells or abandon refrigerators in areas where children play . . ." (Emphasis supplied.)

We have no difficulty in arriving at the conclusion that participation by each of defendants in the so-called "game" constitutes reckless conduct. It is clear that the use of the weapon in the manner described might place each of defendants in danger of death or serious bodily harm. We cannot concur with the defendants' contention that they were either not participants in the activity or that their participation was so minor that it was not a substantial causative factor in Kerr's death.

The testimony demonstrates that each defendant provided a link leading to the death of Kerr. Schlaner provided the weapon and bullet; he replaced the bullet at the urging of Schell and passed the gun to Heston who, in turn, relocated the bullet in the chambers and gave the gun to decedent. Schell spun the chamber and challenged Schlaner to replace the bullet so that the "game" could be played "properly."

The contention that there can be no criminal liability in this case because the victim consented to the conduct which resulted in his death does not

rest on a firm foundation. This view is not only supported by the clear wording of the statute, but also runs counter to Commonwealth v. Malone, 354 Pa. 180, 47 A.2d 445 (1946).

In Malone, a conviction of murder in the second degree was upheld where there were two participants in the playing of "Russian Poker" — similar to the activity in the case at bar. The victim consented to the playing of the game and permitted defendant to pull the trigger twice before the fatal discharge. The significant feature of this decision is that the victim's consent to the participation in the game did not relieve the defendant of culpability.

Criminal responsibility is properly assessed against one whose conduct is a direct and substantial factor in producing the death, even though other factors were combined with the conduct to achieve the result: Commonwealth v. Stafford, 451 Pa. 95, 301 A.2d 600 (1973); Commonwealth v. Skufca, 457 Pa. 124, 321 A.2d 889 (1974).

We are not aware of any Pennsylvania decision covering the precise issue before us. The problem was considered, however, by the Supreme Judicial Council of Massachusetts in Commonwealth v. Atencio, 345 Mass. 627, 189 N.E. 2d 223 (1963). There, the two defendants and the victim played Russian Roulette. One of the defendants produced the weapon, another gave it to decedent prior to the fatal shot, the gun having been passed to the victim by Atencio. Both surviving participants were convicted of involuntary manslaughter.

The Atencio decision emphasizes that involuntary manslaughter may be predicated upon wanton or reckless conduct, holding that, " 'the essence of wanton or reckless conduct is intentional

conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another.' ''

The Atencio court, in upholding its conviction, reasoned that the Commonwealth had an interest that the deceased should not be killed by the wanton or reckless conduct of himself and others. "Such conduct," said the court, "could be found in the concerted action and cooperation of the defendants in helping to bring about the decedent's foolish act."

In the case at bar, it may be observed that there may have been no duty on the part of defendants to prevent the victim from playing, but we deem it reasonable to conclude that there was an obligation or duty not to cooperate or join in the "game."

In determining whether the acts of the defendants were "reckless," we are of the opinion that the trial judge properly applied section 302(b) (3), 18 C.P.S.A. §302(b)(3), which provides as follows:

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."

In our judgment, the conduct of defendants supported an indifference to or heedless disregard of consequences. This conduct, contrary to that of an ordinary, reasonable person, clearly constitutes a violation of the statute in question.

The views expressed herein are consistent with a previous decision of this Court in Commonwealth of Pennsylvania v. Stettler, 36 Lehigh 525 (1976). There a conviction for recklessly endangering the life of another was upheld where defendant pointed what was subsequently determined to be an unloaded weapon at a policeman and yelled, "Freeze or I'll blow your [profanity] head off."

Having concluded that the acts of defendants constitute recklessly endangering the life of another, we have no difficulty in holding that the concerted action of the defendants constituted a conspiracy within the meaning of 18 C.P.S.A. § 903. The acts of the parties indicate that they were acting in concert to a common end. See: Commonwealth of Pennsylvania v. Antico, 146 Pa. Superior Ct. 293, 22 A.2d 204 (1941).

### ORDER

Now, October 14, 1977, defendants' motions in arrest of judgment are denied and it is ordered that they appear for sentencing on November 18, 1977 at 9:30 a.m. in court room no. 4 of the Lehigh County Court House.

It is further ordered that the probation office prepare pre-sentence reports pertaining to each of defendants.