JOHN L. STOCK *vs.* JAMES R. FIFE & others.

Middlesex. October 15, 1981. — January 25, 1982.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Negligence*, Imputed, Joint enterprise. *Motor Vehicle*, Liability of passenger.

Discussion of the elements comprising the doctrine of joint enterprise. [78-79]

In an action for personal injuries against a driver of a motor vehicle and his passengers, the circumstances failed to establish the passengers' right to control the operation of the vehicle, and, therefore, were insufficient to permit a finding that the passengers were equally responsible for the driver's negligence on the theory of joint enterprise. [80-84]

CIVIL ACTION commenced in the Superior Court on May 24, 1978.

A motion for summary judgment was heard by *Morse*, J.

*Stewart T. Herrick* for the plaintiff.

*Pamela J. Aliapoulios* (*Arthur L. Johns* with her) for James C. Driscoll.

GREANEY, J. The plaintiff, John L. Stock, brought this action to recover damages for personal injuries sustained in a two-car collision in Framingham on October 10, 1977. Named as defendants were, the driver of the other car, Thomas J. Fife, and the three passengers in his car, James C. Driscoll, Robert A. Fuller, and Steven C. Kretchman.[1] The passengers were sued on the sole theory that they had en-

---

[1] At the time of the accident, at least Fife and Driscoll were in their teens, and all four of these defendants lived in Needham. Also named as defendants were James R. Fife, Thomas's father and the owner of the car, and Timothy's, Inc., d.b.a. Timothy's Too, a nightclub which served alcoholic beverages to Thomas and his three friends on the evening of the accident.

gaged with the driver in a joint enterprise which made them equally responsible for the driver's negligence. One of the passengers, Driscoll, brought a motion for summary judgment, Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974), which was allowed by a judge of the Superior Court. On motion by the plaintiff, the judge then certified that final judgment in the action against Driscoll was to enter forthwith. See Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).[2] The plaintiff's appeal followed. We affirm.

Taking the undisputed facts and viewing them in the light most favorable to the plaintiff, see *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64, 68 (1981), we examine the record[3] to determine whether there is a genuine issue of material fact which could properly be tried, or whether Driscoll was entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). See *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-556 (1976).

On October 9, 1977, at approximately 6:00 P.M., Thomas Fife spoke with the other three defendants by telephone, and they "made plans to go out." Driving his father's car (with permission to do so), Fife picked up each of his friends at their homes between 6:30 and 7:30 P.M. Fife had half a case of beer in the car, and the four "drove around" Needham for a while, drinking the beer. They "talked about where [they] wanted to go," and they "all decided" to drive

---

[2] It was within the judge's discretion to order the early entry of final judgment under rule 54(b) in the present circumstances. The plaintiff's theory of liability is the same as to all three passengers, and turns on a question of law. The judge could properly have concluded that the early resolution of this question in an appeal of the claim against Driscoll would "simplify, shorten or expedite" the trial of the claims against the other passengers, see *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 252 (1980), or that it could obviate the necessity of trying those claims at all.

[3] In addition to the complaint and Driscoll's answer, the record before us includes the depositions of all three passengers, answers to interrogatories by Driscoll, Fuller and the driver, two statements given by Driscoll to insurance investigators, and Driscoll's affidavit in support of his motion for summary judgment.

to a nightclub called Timothy's Too in Framingham. Each of the defendants drank "two to three" beers on the way, and they arrived at the nightclub sometime after 8:00 P.M.

At Timothy's Too, each of the defendants bought at least one round of drinks. In this manner, they each drank four or five beers or mixed drinks, although Fife, the driver, drank only beer. The defendants left the nightclub sometime before midnight, and Fife drove back toward Needham to drop the others off at their homes. Kretchman was in the front seat, with Driscoll in the back seat on the passenger side, and Fuller in the back seat on the driver's side. At least Kretchman and Driscoll continued drinking beer in the car.

About midnight, the defendants, travelling east on Route 9 in Framingham, reached an intersection with a traffic light. At that point, Fuller "dropped . . . a bottle" in the back seat. Fife, hearing the bottle drop and fearing that beer had spilled in the car, turned around to his right to see what had happened.[4] When Fife turned back to the road, he saw the plaintiff's car entering the intersection from his right, and Kretchman warned him that the traffic light was red. He applied the brakes but could not stop, and the front of his car struck the driver's side of the plaintiff's car, injuring the plaintiff. It appears that Fife was subsequently convicted of failing to stop for a red light, and charges of driving under the influence of alcohol and driving to endanger were continued without a finding.

---

[4] This account of the precipitating cause of the accident, given by Driscoll, is the evidence most favorable to the plaintiff. See *O'Hanley* v. *Ninety-Nine, Inc., supra.* Fuller stated, however, that the sound which caused Fife to turn around was that of "empty bottles on the floor [of the back seat] rolling around." In addition, both Fuller and Kretchman stated that Fife later told them he was distracted when "[h]e heard bottles" in the back seat.

The plaintiff's original theory as to the cause of the accident was that "a beer was being passed from the front seat into the back seat and . . . Fife . . . turned his head in so doing." In depositions, however, Driscoll expressly denied making a statement to that effect following the accident, and Kretchman denied passing a beer across the front seat to Fife.

The plaintiff argues that the foregoing facts would warrant a jury in finding that the occupants of the Fife car were engaged in a joint enterprise, thereby requiring the denial of the passenger Driscoll's motion for summary judgment. We disagree.

As it exists in the law of tort, the doctrine of joint enterprise is narrowly defined and narrowly applied.[5] The black letter law does not permit a finding of joint enterprise in the use of an automobile unless the proof shows (1) an agreement, express or implied, (2) for a common purpose, (3) such that each member has an equal right to direct and control the operation of the automobile. See Prosser, Torts § 72, at 477 (4th ed. 1971); Harper & James, Torts § 26.13, at 1414 (1956); 4D Frumer & Friedman, Personal Injury § 1.02[1], at 158-159 (1971). See also Restatement (Second) of Torts § 491, Comment c, at 548 (1965) (requiring that common purpose involve a "pecuniary interest"). Although a minority of jurisdictions holds that a joint enterprise may be found from mere association for a common purpose, "[s]uch decisions [are] condemned as in effect a restoration of discarded fictions of imputed contributory negligence . . . since it is seldom that some element of common purpose cannot be found when two persons are travelling together in a private vehicle." Prosser, *supra* at 477. As a result this position is "now almost entirely discredited," *id.*, and the overwhelming majority of courts which have considered the question require a showing of the element of control before

---

[5] For background on the joint enterprise theory, see Prosser, Torts § 72, at 476 (4th ed. 1971); Harper & James, Torts § 26.13, at 1414 (1956). From those authorities, the scope of the doctrine appears as follows. Joint enterprise is a theory applied almost exclusively in negligence cases involving automobile accidents. Once established, its practical effect is to impute the negligence of a driver to a passenger in the same vehicle. It has usually been invoked defensively, to establish contributory negligence on the part of a plaintiff passenger who sues a party outside the enterprise (typically, the driver of the other vehicle in the accident). On occasion, however, the doctrine has also been used in an offensive posture where, as here, a party outside the enterprise seeks to recover from a defendant passenger based on the imputed negligence of the driver.

a finding of joint enterprise can be made. *Id.* at 478; Harper & James, *supra.*

Massachusetts follows the majority rule. Under our law, the presence of an agreement and a "community of interest" are elements to be considered. *Barry* v. *Harding,* 244 Mass. 588, 593 (1923). *Caron* v. *Lynn Sand & Stone Co.,* 270 Mass. 340, 346 (1930). We view this as reflecting a recognition that the "relationship of joint [enterprise] is a serious matter" which should not be found "without some definite indication of [the parties'] intention" to enter it. *Carboneau* v. *Peterson,* 1 Wash. 2d 347, 373 (1939), quoting *Lampe* v. *Tyrell,* 200 Wash. 589, 605 (1939). See *Cardullo* v. *Landau,* 329 Mass. 5, 8 (1952) (holding that a joint business venture arises only when parties "intend to associate themselves as such"). These elements, however, alone are insufficient to prove a joint enterprise in this jurisdiction. Rather, it appears settled that a joint enterprise will only be established where the evidence warrants "a finding that the [passenger] had an equal right with the driver in respect of the control of the automobile; . . . [i.e.,] a finding that he had power to control the means, or an equal right to direct the conduct of the undertaking." *Barry* v. *Harding, supra* at 592-593, quoted in *Donoghue* v. *Holyoke St. Ry.,* 246 Mass. 485, 491 (1923). *Caron* v. *Lynn Sand & Stone Co., supra. Thompson* v. *Sides,* 275 Mass. 568, 570 (1931). See *Dumas* v. *Ward,* 251 Mass. 497, 502 (1925); *Slowik* v. *Union St. Ry.,* 282 Mass. 249, 251-252 (1933); *Adams* v. *Dunton,* 284 Mass. 63, 67 (1933). See also *Shultz* v. *Old Colony St. Ry.,* 193 Mass. 309, 322-323 (1907).[6]

---

[6] Although we find no recent case in which this rule is repeated, it is clear that the joint enterprise doctrine and the control requirement quoted above are still considered good law in this Commonwealth. See Nolan, Tort Law § 268, at 435 (1979); Martin & Hennessey, Automobile Law and Practice § 339, at 257 (2d ed. 1967); Bouchard, Apportionment of Damages Under Comparative Negligence, 55 Mass. L. Q. 125, 135 & n.53 (1970); Note, Doctrine of Imputed Negligence, 33 B.U. L. Rev. 90, 98-99 (1953). Cf. *Bessey* v. *Salemme,* 302 Mass. 188, 210 (1939); *Patterson* v. *Barnes,* 317 Mass. 721, 724 (1945); *Weiss* v. *Republic Pipe & Supply Corp.,* 335 Mass. 422, 426 & n.1 (1957).

The plaintiff correctly points out that the essence of the control requirement is not the actual exercise of control, but merely the right to control the operation of the vehicle. See Prosser, *supra* § 72, at 478-480. This case, however, involves none of the factors which have traditionally been considered sufficient to establish such a right of control. Here, the car was not owned by Driscoll or any other passenger, see *Hutchings* v. *Vacca*, 224 Mass. 269, 270 (1916); *Thompson* v. *Sides*, *supra* at 569; see also *Adams* v. *Swift*, 172 Mass. 521, 521 (1899) (rental), but by the father of the driver, who was not present on the trip. The parties had no agreement with respect to the sharing of expenses, *Beaucage* v. *Mercer*, 206 Mass. 492, 497-498 (1910), the sharing of driving responsibilites, *Isaacson* v. *Boston, Worcester & N.Y. St. Ry.*, 278 Mass. 378, 391 (1932); see *Adams* v. *Swift*, *supra* at 522-523, or the route to be taken on the trip, *Jackson* v. *Queen*, 257 Mass. 515, 517 (1926). The purpose of the trip was not business, *Caron* v. *Lynn Sand & Stone Co.*, *supra* at 347, but pleasure. Moreover, there is nothing to indicate that any of the passengers had real authority to direct the manner in which the car was actually operated. *Hutchings* v. *Vacca*, 224 Mass. at 270; *Jackson* v. *Queen*, 257 Mass. at 517. See *Adams* v. *Swift*, 172 Mass. at 523.[7]

In the absence of these or other factors manifesting a right to control, the plaintiff's case for a joint enterprise lacks substance. Essentially, it rests on four facts which considered alone or together are insufficient to establish a joint enterprise. First, there is the parties' agreement to go out for the evening, their later agreement to drive to the night-

---

[7] As to most of these factors, the only direct evidence appears in a statement given by Driscoll to an insurance investigator. When asked by the investigator whether any of the passengers "gave [Fife] any money for gas," whether they told Fife "which direction to take," and whether they gave him "any directions on . . . how to drive," Driscoll answered "no" to all questions. In addition, Driscoll's affidavit in support of his motion for summary judgment contains similar averments, and the plaintiff has placed nothing in the record which controverts them. See Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974); *Community Natl. Bank* v. *Dawes*, 369 Mass. at 554.

club, and their understanding that Fife would ultimately drive them all home. Agreements for a common social purpose might be sufficient to establish a claim in a few jurisdictions, but they do not make out a joint enterprise in Massachusetts. Our cases have long specifically held that "[t]he fact that persons ride together in the relation of host and guest is not sufficient . . . . The common purpose of riding together for pleasure does not alone establish a joint enterprise." *Barry* v. *Harding,* 244 Mass. at 593; *Caron* v. *Lynn Sand & Stone, Co.,* 270 Mass. at 347; *Thompson* v. *Sides,* 275 Mass. at 570. See *Boyd* v. *McKeever,* 384 Mich. 501 (1971) (finding no joint enterprise where "five young people decided to go out together just to drive around," at 502, but relying on agency principles rather than control, at 508-509).[8]

Second, there is the fact that the parties were drinking together throughout the course of the evening. We are aware, of course, that drinking on the part of the driver, Fife, may have contributed to the occurrence of the accident. There was no showing, however, that the passengers forced, pressured, or induced Fife to drink, or that his drinking was anything but an act of independent volition.[9]

---

[8] As has been noted, the current Restatement test for joint enterprise is stricter than our own, requiring that the common purpose of the trip involve a "pecuniary interest." See *Easter* v. *McNabb,* 97 Idaho 180, 182 (1975). Bearing that in mind, however, the following passage from that authority summarizes our view as to the agreements discussed above. "[T]he trip is not a joint enterprise merely because . . . [the passenger] and his host have a common destination, because the destination or any change in it is to be determined by mutual agreement . . . or even because they are going to the common destination to accomplish a purpose in which they have a common . . . interest. No one of these facts, nor indeed all of them together, is sufficient to justify a jury or other trier of fact in finding that the trip was a joint enterprise." Restatement (Second) of Torts, *supra* § 491, Comment e, at 549.

[9] In fact, as noted, *supra,* there was evidence that Fife had half a case of beer in his car at the time he picked up his friends at their homes, and that evidence is uncontradicted. Driscoll asserted in his statement to the insurance investigator that "we persuaded Tom Fife to only drink beer because we knew that he would be driving," and that evidence is also uncontradicted. See Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974).

The fact that all the occupants of the car were drinking does not make the excursion a joint enterprise. See *West* v. *Soto*, 85 Ariz. 255, 261-263 (1959); *Padgett* v. *Southern Ry.*, 219 S.C. 353, 356-358 (1951); *Gray* v. *Barnes*, 244 S.C. 454, 463-465 (1964). Cf. *Cecil* v. *Hardin*, 575 S.W.2d 268, 271-272 (Tenn. 1978). Beyond this, there is nothing in the record to support a conclusion that Fife, as a result of his drinking, surrendered control over the manner in which the vehicle was actually operated or to show that the parties' drinking gave the passengers any greater right to control Fife's operation of the vehicle than they would have had if there had been no drinking at all.[10]

Third, there is the fact that Fuller dropped a bottle in the back seat, which distracted Fife's attention from the road thereby precipitating the accident. This purely fortuitous event adds nothing to the argument for a joint venture. Al-

---

[10] We also conclude that the facts do not permit recovery under § 876(b) of the Restatement (Second) of Torts. That section provides that one may be liable for the tortious conduct of another if he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." This theory has been applied only once before in Massachusetts, on facts rather remote from those presented here. See *Nelson* v. *Nason*, 343 Mass. 220, 222 (1961) (allowing recovery where defendant participated in high speed automobile race on public way). See also *Payton* v. *Abbott Labs*, 512 F.Supp. 1031, 1035, 1038-1039 (D. Mass. 1981) (applying § 876[b] under Massachusetts law in products liability action). Cf. *Brown* v. *Perkins*, 1 Allen 89, 96-98 (1861) (holding that "aider and abettor" is liable as principal for trespass). Additionally, the application of this section has been rejected, albeit over dissent, in several recent cases involving facts quite similar to those of the present case. See *Slicer* v. *Quigley*, 180 Conn. 252, 258-259 (1980); *Cecil* v. *Hardin*, 575 S.W.2d 268, 272-273 (Tenn. 1978). See also Restatement (Second) of Torts § 875, Comment a. In the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result. "There are even occasional statements that mere knowledge by each party of what the other is doing is sufficient 'consent' to make each liable for the acts of the other but this seems clearly wrong. . . . [T]he mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility." *Prosser, supra*, § 46, at 292 (discussing liability of joint tortfeasors for concerted action).

though Fuller, by dropping the bottle, was able, in an abstract sense, to exert a measure of control over the driver's behavior, the fact that he did so by accident obviously detracts from any conclusion that the passengers were "equal promoter[s] and manager[s]" of the operation of the car on the excursion. See *Adams* v. *Swift*, 172 Mass. at 524.

Fourth, and finally, there is the fact that Kretchman warned Fife that the traffic light was red immediately prior to the accident. Warnings of this sort have been present in several joint enterprise cases, see, e.g., *Barry* v. *Harding*, 244 Mass. at 591; *Isaacson* v. *Boston, Worcester & N.Y. St. Ry.*, 278 Mass. at 383, and one case has expressly considered them a factor bearing on the existence of the passenger's right "to control or influence the conduct of the driver," *Hutchings* v. *Vacca*, 224 Mass. at 270. In the present case, however, the other relevant factors show slight evidence of the requisite control. We are not inclined to give warnings great weight because a passenger need not be a member of a joint enterprise to express his concern regarding an impending danger. For those reasons, Kretchman's warning does not supply sufficient additional proof to permit a finding of joint enterprise.[11]

---

[11] In reaching our conclusion, we have carefully reviewed the cases cited by the plaintiff and find them distinguishable. Although those cases allowed recovery against a passenger under an offensive use of the joint enterprise theory, see note 6, *supra*, the defendant in both cases was a parent who allowed a minor child to drive despite the child's age and lack of driving experience. See *Adams* v. *Swift*, 172 Mass. at 524; *Hutchings* v. *Vacca*, 224 Mass. at 270. Our own research reveals no other case in which facts like the present were deemed sufficient to allow recovery on a joint enterprise theory. The plaintiff's reliance on *Commonwealth* v. *Atencio*, 345 Mass. 627, 630 (1963), is misplaced. The joint enterprise found in that case arose out of a game of "Russian roulette" which involved immediate risks and affirmative participation of a sort not present here.

It is worth observing as well (see *West* v. *Soto*, 85 Ariz. at 263) that the Legislature has not chosen to impose criminal liability on automobile passengers in the present situation. The statute which proscribes driving under the influence of intoxicating liquor punishes only the driver of the vehicle. G. L. c. 90, § 24 ("Whoever . . . operates a motor vehicle while under the influence . . ."). In addition, criminal liability under the Dram

As a final argument, the plaintiff criticizes the control requirement enunciated by our cases, characterizing it as a judicial fiction, the application of which only serves to protect a wrongdoer from the natural consequences of his acts. He urges us to conclude that Driscoll and the other passengers should be held liable based on the "fact[s] that all of their decisions were collectively made, and that each was a free and willing participant in the group." It is somewhat tempting to use the facts of this case as a tool to fashion a broad civil remedy which might be used to deter the carnage wrought by intoxicated drivers. But to do so (by holding a passenger liable) would undermine the premise that liability in tort rests on a breach of duty, by imposing a duty on someone who lacks the ability to take meaningful action to control the circumstances in which he finds himself. A passenger who does not own the vehicle can refuse to ride with an intoxicated driver, or express concern over the driver's condition, but he cannot take or seize control of the automobile. Acceptance of the quantum of proof suggested by the plaintiff to establish a joint enterprise would make passengers of virtually any group engaged in a pleasure trip liable for the negligence of the driver irrespective of their ability to control or insure against the driver's actions. A deluge of lawsuits inviting unpredictable results would surely follow. The Massachusetts law of joint enterprise in tort addresses these concerns — essentially on a policy level — by placing primary responsibility on the driver and by restricting the liability of the passengers in the absence of a true right to exercise control.

*Judgment affirmed.*

---

Shop Act appears to be based in part on the financial benefit which barkeepers derive from the sale of liquor. See G. L. c. 138, §§ 62, 69; *Adamian* v. *Three Sons, Inc.,* 353 Mass. 498, 501 (1968). No such financial interest is present among the parties in this case.