Helen Grenier LYON, etc., et al.
Plaintiffs, Appellants,

v.

The RANGER III and Gerald J. Costa,
Defendants, Appellees.

Helen Grenier LYON, etc., et al.,
Plaintiffs, Appellees,

v.

The RANGER III and Gerald J. Costa,
Defendants, Appellants.

Nos. 87–1957, 87–1958.

United States Court of Appeals,
First Circuit.

Heard May 2, 1988.

Decided Sept. 22, 1988.

Submitted Oct. 6, 1988.

Rehearing En Banc Denied
Oct. 19, 1988.

Bertram E. Snyder with whom Paul D. McCarthy and Looney & Grossman, Boston, Mass., were on brief, for the Ranger III and Gerald J. Costa.

David B. Kaplan with whom Thomas M. Bond, Chelsea, Mass., was on brief, for Helen Grenier Lyon, et al.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

BREYER, Circuit Judge.

A whale-watch ship, the Ranger III, struck and killed a scuba diver, Thomas Lyon, when Lyon suddenly surfaced eight feet in front of the boat, then on its way into Provincetown harbor. Lyon's wife, children, and estate brought this wrongful death action under general maritime law, 28 U.S.C. § 1333 (1982); *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 397–403, 90 S.Ct. 1772, 1785–89, 26 L.Ed.2d 339 (1970), against the Ranger III and its owner-operator Gerald Costa (who impleaded as defendants members of Lyon's dive team). After a bench trial, the district court, applying principles of comparative negligence, concluded that the ship and its owner were 45 percent responsible, that Lyon and his dive team (three people including Lyon) were 45 percent responsible, and that one member of the dive team bore an additional 10 percent responsibility in light of his failure to warn the ship of the divers' presence. The plaintiffs appeal, complaining of the court's apportionment of fault; the whale-watch ship defendants appeal, primarily attacking the court's finding of negligence. We conclude that the district court's determinations are legally correct; and we affirm its judgment.

## I.

### *The Plaintiffs' Appeal*

For purposes of this appeal we set out the following facts, all of which have adequate record support. On May 22, 1982, four members of a non-profit scuba diving group (called the Dive-a-dors) set out to dive for clams and lobsters just off Long Point, Provincetown, Massachusetts. Three members of the group, Thomas Lyon, Marc Paul, and Norbert Therien were highly experienced divers; one of them (Bernard Desjardins) was a novice. The group used an inflatable rubber boat, which flew a "dive flag" designed to warn other boats of the presence of divers. The divers did not carry floats with individual warning flags. Because Massachusetts law requires "scuba divers" to "remain in an area within one hundred feet of ... [a] displayed diver's flag while at or near the surface of the water," Mass.Gen.L. ch. 90B § 13A, the divers' failure to use individual float flags meant that their boat had to keep track of them and had to stay near them while they were under water. Paul, who remained in the boat, intended to keep track of the underwater divers by watching their air bubbles.

While Lyon and Therien were diving about 250 yards from shore, Paul lost track of their air bubbles and stopped the boat. At about this time Costa approached the area in the Ranger III. Costa saw Paul, but Paul made no sign that might have warned the Ranger III that divers might be present more than 100 feet from the boat. Suddenly, Lyon and Therien surfaced, 350 feet away from the inflatable boat and directly in front of the Ranger III. The Ranger III then struck and killed Lyon.

On these facts, the district court's holding that Lyon was 45 percent responsible for the accident would seem adequately supported. First, Lyon surfaced 350 feet away from the warning flag, 250 feet beyond the warning flag zone. Second, Lyon was responsible, along with the two other experienced divers, for the dive plan. That plan was seriously flawed: it made no provisions for signalling the divers should vis-

ual (*i.e.*, "air bubble") contact be lost; nor did it contemplate the use of individual float flags (although the use of such devices is apparently common; and Lyon himself had used a towed float with diver's flag earlier that morning). Certainly a diver, diving near a harbor or shipping channel, who surfaces well outside the 100 foot warning flag zone (and who had failed to take reasonable steps to see that he would surface within that zone), might be held 45 percent responsible for the ensuing collision.

The problem that led to this appeal, however, is that the district court, when calculating the level of Lyon's comparative negligence (and thus the amount by which to reduce Lyon's award) said that the defective diving *plan* was in large part responsible for the accident. Specifically, the district court attributed "45 percent of the negligence" to "the diving group" (Tr. Vol. 6, Excerpt, at 13); and held that because Lyon, Therien, and Paul were "joint[ ] and equal[ ] participants in the development of the diving plan," (Tr. Vol 6, Excerpt, at 8), each of them would be held responsible "for the amount of negligence attributed to the defective diving plan." (Tr. Vol. 6, Excerpt, at 12). Appellants contend that, consequently, the district court should not have reduced appellants' damage award by 45 percent. They say that the district court wrongly "*imputed*" to Lyon the negligence of the two other, equally responsible, dive team members; and this imputation violates principles both of "comparative negligence" (by reducing appellants' award by more than Lyon's own 15 percent) and of "joint and several liability" (by not allowing appellants to collect from Ranger III the 30 percent attributable to the two other dive-plan creators).

■ 1. Our reading of the record, however, convinces us that the district court did not *impute* to Lyon the negligence of his two experienced companions. The transcript of June 26, 1987 (at 13) makes clear that the district court did *not* rely on a theory of "joint enterprise," which would *impute* the negligence of each to the others. *See* W. Prosser, *Law of Torts* § 72

(4th ed. 1971) [hereinafter "Prosser"] ("act of any one within the scope of the [joint] enterprise is to be charged vicariously against the rest"). We believe the correct way to characterize the district court's holding is to say that it held that (1) Lyon *himself* was 45 percent negligently responsible for the accident and (2) the fact that Lyon's co-divers (like Lyon) were equally at fault for failing to modify the dive plan did not diminish Lyon's personal responsibility.

We see nothing in the law that forbids the district court from assessing Lyon's fault at 45 percent despite the similar fault of his colleagues. Lyon's fault was serious. He was fully responsible for the dive plan. He, like each of the two others, controlled the plan, in the sense that he, like the others, could have suggested alternatives. And, in that sense, too, he negligently failed to control the negligence of the others, and is therefore, actively (not "imputedly") responsible for that negligence. *Restatement (Second) of Torts* § 495 (1965) [hereinafter "*Restatement (2d)*"]. Indeed, his negligence vis a vis his own safety, in this respect, exceeds theirs. *Restatement (2d)* § 495 comment b (plaintiff "required to do more to secure his own safety than he is required to do to secure the safety of others"). We are aware of no legal principle that requires a district court to reduce, perhaps to inconsequential levels, such serious fault, simply because two (or three, or thirty) colleagues also failed to take proper care. Suppose, for example, a plaintiff truck driver negligently failed to inspect his brakes and that the defective brakes contributed to a serious accident. Must a court reduce the truck driver's fault in direct proportion to the (possibly fortuitous) number of others who at some relevant time should also have checked the truck? Suppose a watchman negligently fails to warn of a negligently set fire (that destroys his own goods). If the failure to warn is responsible for 40 percent of the damage, must a court automatically reduce the watchman's negligence to 10 percent if there were four watchmen—or to four percent negligence if there were 10 watchmen? Might not such a rule diminish individual responsibility in direct proportion to

the size of the group, thereby encouraging individual negligence? *Cf. Abel v. Eli Lilly & Co.*, 418 Mich. 311, 343 N.W.2d 164, 176 n. 19 (concert-of-action theory evolved "to deter hazardous group behavior"), *cert. denied,* 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984). We would not reach such counter-intuitive results in the absence of controlling authority; and appellants point to none. As far as we are aware, assessing "comparative fault" is not so much an exercise in pure mathematics as it is an exercise in judgment. Here, the district court, while using numbers, has essentially used those numbers to say that Lyon was just as responsible for the accident as was the Ranger III. We can find nothing unreasonable about that conclusion.

Because one might argue that the negligence of each of the three divers helped to *cause* Lyon's death, we have examined the *Restatement* section on "Apportionment of Harm to Causes." *Restatement (2d)* § 433A. But we have found nothing there to change our minds. That section says that damages for harm can be apportioned among two or more causes only (1) where there are "distinct harms" or (2) where "there is a reasonable basis for determining the contribution of each cause to a single harm." Here, there are not "distinct harms", *cf. Restatement (2d)* § 433A comment b ("There are ... results which, by their nature, are more capable of apportionment ... [such as] [i]f two defendants independently shoot the plaintiff at the same time, and one wounds him in the arm and the other in the leg."). Nor can one reasonably determine "the contribution of each cause" to the single harm. Rather, it seems reasonable to say that "each cause" caused the *whole* harm, for each diver failed to alter the dive plan. *Cf.* W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 52 at 346–47 (5th ed. 1984) [hereinafter "Prosser & Keeton"] (when two defendants are under a similar duty to prevent a particular event, such as the fall of a party wall, and each defendant fails to meet his obligation, each defendant is liable for all of the resulting harm, for there is no reasonable basis for

any division of damages). That being so, we cannot fault the district court on the basis of that section.

Nor can we agree with plaintiffs that the district court's holding abrogates the tradition of "joint and several liability"—that a plaintiff may seek *all* damages from a single defendant who may be only partially at fault. *See* Prosser § 47 at 297 (common law principle that a tortfeasor may be liable for entire loss sustained by plaintiff, even though tortfeasor's act "concurred or combined" with that of another wrongdoer to produce the result). In fact, the district court here has not limited the Ranger III's liability to the Ranger III's own proportionate fault (45 percent). Rather, it has held the Ranger III liable for 55 percent (the Ranger III's share plus the extra 10 percent share attributed to Paul's failure to warn) of all damages. Thus, the Ranger III has been held liable for all damages *except* those damages attributed directly to Lyon's own proportionate share. For similar reasons, the district court's holding *does not,* as appellants have claimed, run counter to the "evolutionary chain," begun in "antediluvian times," which has led Western society from "contributory negligence" to "comparative negligence." *See* Brief for Appellant at 11. Rather, as we have said, the district court, finding Lyon himself 45 percent comparatively negligent, held only that similar, causally related actions (more likely, omissions) by others do not necessarily diminish one's own personal responsibility. We see no reason why this cannot be so. That is, we see no reason why, on some occasions, a negligent failure by someone other than the plaintiff might be causally related to an accident and yet be essentially irrelevant to the degree to which the plaintiff is personally responsible.

■ 2. Alternatively, even if we were wrong about Lyon's personal responsibility, our research indicates that this is an instance where the law would *impute* to Lyon the negligent failure of his fellow divers. The example before us falls within the doctrine of "joint enterprise." According to that doctrine, where there is "an

undertaking to carry out a small number of acts or objectives ... entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise ... [t]he law then considers that each is the agent or the servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest." Prosser & Keeton § 72 at 517. *See also* S. Speiser, C. Krause & A. Gans, *The American Law of Torts*, § 3:5 (1983) [hereinafter "Speiser, Krause & Gans"] (joint enterprise requires mutual understanding for common purpose, right to voice in direction and control of means of carrying out purpose and, in some states, a pecuniary interest); *Restatement (2d)* § 491. The doctrine of joint enterprise is "of importance chiefly as a defendant's doctrine, imputing the negligence of another to the plaintiff." Prosser § 72 at 476.

■ Here, where there is no special statutory liability scheme, *see Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979) (claim by longshoreman under Longshoremen's and Harbor Workers' Compensation Act); *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) (same); *Joia v. Jo–Ja Service Corp.*, 817 F.2d 908 (1st Cir. 1987) (claim by seaman under Jones Act and maritime doctrine of unseaworthiness), *cert. denied,* —— U.S. ——, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988), we are to use common law tort principles consistent with principles of admiralty. *See, e.g., Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257, 259–60 (2d Cir.1963), *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964); G. Gilmore & C. Black, *The Law of Admiralty* § 1–16 at 46–47 (2d ed. 1975). And, because the accident took place in Massachusetts waters only ¼ mile from the coast, we should turn to Massachusetts law. *See Just v. Chambers*, 312 U.S. 383, 391, 61 S.Ct. 687, 692, 85 L.Ed. 903 (1941) ("broad recognition" in admiralty of state authority "to create rights and liabilities with respect to conduct within their borders, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction"); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 672 (1st Cir.1980) (quoting *Just, supra* ), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed. 2d 336 (1981); *H. & H. Wheel Service, Inc.,* 219 F.2d 904, 912–13, 915 (6th Cir.1955) (applying Michigan law where tort took place in Michigan waters).

The Massachusetts courts have found "joint enterprises" where participants in an activity "ha[ve] an equal right to direct and control the conduct of the other[s] concerning acts or omissions which cause, or contribute to the causation of, injury." *Adams v. Dunton*, 284 Mass. 63, 67, 187 N.E. 90, 92 (1933) (duck hunting); *see also Stock v. Fife*, 13 Mass.App.Ct. 75, 78, 430 N.E.2d 845, 847 (1982) (joint enterprise in automobile context requires (1) agreement (express or implied), (2) for a common purpose, (3) such that each has an equal right to direct and control); *Commonwealth v. Atencio*, 345 Mass. 627, 189 N.E.2d 223 (1963) (participants in Russian roulette game liable to criminal prosecution where they gave "mutual encouragement in joint enterprise"); R. Nolan, *Massachusetts Practice* § 268 (1979).

Although plaintiffs, pointing to *Restatement (2d)* § 491 comment c, assert that the "joint enterprise" doctrine applies only where a *pecuniary interest* binds its members, our own research indicates that in Massachusetts no such pecuniary interest is required. *See e.g., Stock,* 430 N.E.2d at 849 n. 8 (stating that "the current Restatement test for joint enterprise is *stricter than our own,* requiring that the common purpose ... involve a 'pecuniary interest' ") (emphasis added); *Alderman v. Noble,* 296 Mass. 30, 33, 4 N.E.2d 619, 621 (1936) (joint enterprise need not involve "financial affairs"); *Adams,* 284 Mass. at 65, 187 N.E. at 92 (joint enterprise where "equal right to direct and control"). *But cf. Payton v. Abbott Labs,* 512 F.Supp. 1031, 1036 (D.Mass.1981) ("joint *venture* [not a "joint enterprise"] requires pecuniary interest shared by members"); *Searcy v. Paul,* 20 Mass.App.Ct. 134, 147, 478 N.E.2d 1275, 1283; (1985) (same); 5 F. Harper, F. James

& O. Gray, *The Law of Torts*, § 26.13 (2d ed. 1986) [hereinafter "Harper, James & Gray"] (distinguishing "joint enterprise" from "joint venture," which requires a pecuniary interest). All these Massachusetts cases we have found emphasize the "right to control" as the essential characteristic of a joint enterprise. *See, e.g., Stock*, 430 N.E.2d at 851; *Adams*, 187 N.E. at 92; *cf. General Building Contractors Association, Inc.*, 458 U.S. 375 (1982) (imputed negligence requires right to control agent's conduct). Even though Massachusetts cases recognize that "the doctrine of joint enterprise is narrowly defined and narrowly applied," *Stock*, 430 N.E.2d at 847, we think Massachusetts would apply that doctrine here where the parties did not contest the common control of the diving plan. *Cf. Merrill Trust Co. v. Bradford*, 507 F.2d 467 (1st Cir.1974) (no presumption of boat owner's liability where evidence showed agreement of *shared responsibility* between pleasure boaters all "in the venture together;" suits possible between colleagues only if one shown non-negligent).

A further set of "imputed liability" cases that seems closely analogous holds individual defendants fully (100 percent) liable when they act in concert with others. A "classic 'concert of action' [tort]" exists if there is an "agreement and joint action among the defendants with regard to warnings and other safety features." *Hall v. E.I. Du Pont de Nemours & Co., Inc.*, 345 F.Supp. 353, 373–74 (E.D.N.Y.1972), *aff'd*, 519 F.2d 715 (6th Cir.1975). In such a case, each defendant is liable not only for his own acts but also for the acts of others with whom he acts in concert, *see* 3 Harper, James & Gray § 10.1 ("concert of action" makes it "proper to treat the conduct of each as the conduct of the others as well"); *Restatement (2d)* § 876 & comment a (same); Prosser & Keeton § 46 (same); Speiser, Krause & Gans § 3:4 (similar); *see, e.g., Thompson v. Johnson*, 180 F.2d 431 (5th Cir.1950) (where group aided assault and battery, all liable under "concerted action" or non-pecuniary "common enterprise" theories); *Hall*, 345 F.Supp. at 371–74 (finding "concert of action" where blasting industry cooperated to set inadequate safety standards for blasting caps, members had "joint control of risk"); *Skipper v. Hartley*, 242 S.C. 221, 130 S.E.2d 486 (1963) (car racers each liable for all damages done by any one); *Keel v. Hainline*, 331 P.2d 397 (Okla.1958) (defendant liable for participation in eraser-throwing game that resulted in injury to bystander); *Michigan Miller's Mutual Fire Insurance Co. v. Oregon–Washington Rail and Navigation Co.*, 32 Wash.2d 256, 201 P.2d 207 (1948) (where railroads acted "in concert" according to general plan of burning right of way to clear it, each railroad responsible for fire damage); *see also Abel v. Eli Lilly & Co.*, 418 Mich. 311, 343 N.W.2d 164, 176 n. 19 (1984) (concert-of-action theory evolved "to deter hazardous group behavior"), *cert. denied*, 469 U.S. 833, 105 S.Ct. 133, 83 L.Ed.2d 65 (1984). Here, the parties had "joint control of risk" in their "cooperative or parallel activities regarding the safety features" of the diving plan. *Hall*, 345 F.Supp. at 372. All three divers directly controlled the plan; all three "participated actively and equally" in its generation; each alone could have suggested alteration. Thus, these cases suggest holding Lyon 45 percent responsible.

As we noted earlier at pp. 26–28, *supra*, the Massachusetts "joint enterprise" cases provide sufficient support for the district court's decision. Those cases, along with the "concert of action" cases also offer support for the alternative ground that we discussed in Part I, pp. 25–26, *supra*. Insofar as they show that negligence *imputed* to a plaintiff would bar recovery for that negligence, the plaintiff's *actual* negligence should bar recovery *a fortiori*.

For these reasons, we reject plaintiffs' claims on their appeal.

## II.

### The Defendants' Appeal

██ The Ranger III and its captain, Gerald Costa, appeal from the district court's finding that they were negligent and must bear 45 percent of the responsibility for the accident. We take as given

the facts that (1) Costa was an experienced ship's captain who knew that divers frequently dove in the vicinity; (2) Costa was travelling at 9 or 10 knots when the accident took place; (3) the accident took place 250 yards from shore and about 350 feet from the dive boat; (4) Costa was travelling midway between the shore and the black buoy that marked (on its further side) a deep water channel into the port; that is, he was travelling outside of (and shoreward of) the deep water area; (5) Costa had not posted a lookout.

Accepting these facts, Costa points out the following district court findings. First, Costa points out that the district court did not find that the Ranger III was in the wrong place, for no rule required it to use the deep water channel. Second, Costa notes that the district court found that a lookout could not have prevented the accident, for the ship could not have stopped in time, and that the failure to post a lookout was *not* negligent in terms of a federal statute (which says that a vessel shall have "a proper look-out ... so as to make a full appraisal of the situation and of the risk of collision." 33 U.S.C. § 2005 (1982)). Finally, Costa points out that the court said that "appropriate speed ... is not determined by any particular statutory provision" (Tr. Vol. 6, Excerpt, at 3)—a statement that Costa takes to mean that the court believed that the vessel was proceeding, in the words of 33 U.S.C. § 2006 (1982), "at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions." If the Ranger III was in a reasonable place, travelling at a reasonable speed, and a lookout could not have helped, just how, Costa asks, was he negligent?

The answer to Costa's question lies in a closer examination of what the district court actually held. The court wrote that it found negligence because the

Ranger III was operating in waters known to be favored by scuba divers because of the thermocline and lobstering activity and was operating in that area without the increased vigilance that, in the exercise of reasonable care, should

have been used in relation to various aspects of the operation of the vessel, including lookout, speed and maintaining adequate clearance from a flagged diving boat in the area. (Tr. Vol. 6, Excerpt, at 5).

As we understand this language, the district court concluded that the Ranger III should have travelled slower than 10 knots, *or* at a greater distance, *and* perhaps (depending upon distance and speed), with a lookout. That Costa should have slowed down or moved further from the inflatable boat after he saw it (and that his failure to take some such action was negligent) seems to us a conclusion that the district court could reasonably reach on the basis of the record. (Costa himself testified that he normally gave about a 1,200 foot berth to diving groups to account for the sometimes unpredictable location of divers.) And we see nothing confusing or contradictory about the court's explanation of that conclusion. The fact that the court found there was no *"per se"* or "statutory" negligence likely reflects no more than its view that the particular statutes at issue seek to prevent collisions among vessels, not collisions with divers. *See* 33 U.S.C. §§ 2005 and 2006 (1982); S.Rep. No. 979, 96th Cong., 2d Sess. 1, *reprinted in* 1980 U.S. Code Cong. & Admin. News 7068. *See also Restatement (2d)* § 286 (statutory negligence exists only when injured party is within target group protected by statute and accident is of the type the statute seeks to prevent); *see also* Prosser & Keeton § 36 (same). Given its findings of ordinary negligence, the district court need not have reached the statutory negligence question (nor need we); but in any event, any error in respect to those conclusions about the statutes or other related statutory provisions, *see* Mass.Gen.L. ch. 90B § 13A, worked to the advantage of the defendants, not to their disadvantage. Thus, they cannot complain of it here. *See* 5A C.J.S. *Appeal & Error* § 1678a at 713 ("It is a rule of universal application that appellant cannot complain of, or seek review as to, errors which were favorable to him or operated in his favor.").

30

The defendants also point to a Massachusetts law requiring that boats operating within sight of a diver's flag shall "proceed with caution and within a radius of one hundred feet of such flag" and "shall proceed at a speed not to exceed three miles per hour." Mass.Gen.L. ch. 90B § 13A. As the district court pointed out, however, one cannot negatively imply from this statute that at 250 feet outside the dive-flag area a speed of 10 knots is safe. *See Restatement (2d)* § 288C ("compliance with a legislative enactment ... does not prevent a finding of negligence where a reasonable man would take additional precautions"); Prosser § 36 at 203 ("The statutory standard is no more than a minimum, and it does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions."); *Raymond v. Riegel Textile Corp.,* 484 F.2d 1025, 1028 (1st Cir.1973) (same).

Defendants also challenge two aspects of the damage award: (1) the district court's decision *not* to discount the *future* lost earnings (that Lyon would have contributed to his family's support); and (2) the district court's decision to award damages to Lyon's son, Thomas, of $1,000 per year (for Lyon's life expectancy) for loss of services, society, companionship and economic contribution. As to the first of these claims, the district court explained that the appropriate discount for the time value of money was offset by at least an equivalent amount by the likely increase in Lyon's wages because of his increased personal productivity. This finding seems amply supported, but even were that not so, defendants could not prevail here because they did not voice the issue below. *United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 760 (1st Cir.1985); *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979); *Dobb v. Baker,* 505 F.2d 1041, 1044 (1st Cir. 1974). In regard to the second matter, we find the closeness of the Lyon family to be amply supported by record evidence.

For these reasons, the judgment of the district court is

AFFIRMED.

## MEMORANDUM AND ORDER

In plaintiffs' petition for rehearing, they quote the following language from *Stock v. Fife,* 13 Mass.App.Ct. 75, 81, 430 N.E.2d 845 (1982) as support for the proposition that the Massachusetts courts would not find a "joint enterprise" in the circumstances of this case:

Agreements for a common social purpose might be sufficient to establish a claim in a few jurisdictions, but they do not make out a joint enterprise in Massachusetts.

In context, however, the quotation does not support plaintiffs' arguments. The *Stock* court pointed out that the key element in determining whether or not a joint enterprise exists is the element of *common control.* It said (in the language just quoted) that to show an agreement for a "common social purpose" did not *automatically* show control; it is not, in and of itself *sufficient* to show control. But the *Stock* court made clear that where control does exist, a joint enterprise exists, whether or not the "joint enterprisers" share a pecuniary interest. The full paragraph from which plaintiffs took the quoted sentence, reads as follows:

*In the absence of these or other factors manifesting a right to control,* the plaintiff's case for a joint enterprise lacks substance. Essentially, it rests on four facts which considered alone or together are insufficient to establish a joint enterprise. First, there is the parties' agreement to go out for the evening, their later agreement to drive to the night-club, and their understanding that Fife would ultimately drive them all home. Agreements for a common social purpose might be *sufficient* to establish a claim in a few jurisdictions, but they do not make out a joint enterprise in Massachusetts. Our cases have long specifically held that "[t]he fact that persons ride together in the relation of host and guest is not sufficient.... The common purpose of riding together for pleasure does not *alone* establish a joint enterprise." *Barry v. Harding,* 244 Mass. [588] at 593 [139 N.E. 298 (1923)]; *Caron v. Lynn Sand & Stone, Co.,* 270 Mass. [340] at

347 [170 N.E. 77 (1930)]; *Thompson v. Sides*, 275 Mass. [568] at 570 [176 N.E. 623 (1931)]. *See Boyd v. McKeever*, 384 Mich. 501 [185 N.E. 344] (1971) (finding no joint enterprise where "five young people decided to go out together just to drive around," at 502 [185 N.E. 344], but relying on agency principles rather than control, at 508–509, [185 N.E. 344]).

*Stock*, 13 Mass.App.Ct. at 81, 430 N.E.2d 845 (footnote omitted) (emphasis added).

As we stated in our opinion, there is no question but that the members of the Lyon dive team had "common control" of the plan. The divers were not engaged in a typical, common social situation, such as travelling in a car together, *see Stock, supra;* they were engaged in the atypical social situation of engaging in a highly dangerous sport where the life of each was dependent upon the actions (or inactions) of the others. They jointly formulated a detailed dive plan. The district court found that each member of the team had the same power to control the content of that plan. Each could take "meaningful action to control the circumstances in which he [found] ... himself." *Stock*, 113 Mass. App.Ct. at 84, 430 N.E.2d 845. Thus, under *Stock* a "joint enterprise" existed.

The remainder of plaintiffs' arguments concern the appropriate characterization of the district court's initial decision, a matter that we previously examined. We find nothing new in the petition of significance.

The petition for rehearing is

*Denied.*