USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2377 CHRISTINE FAVORITO, ET AL., Plaintiffs, Appellants, v. NICHOLAS PANNELL, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Breyer,* Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Barry I. Fredericks for appellants. ___________________ James T. Shirley, Jr., with whom Haight, Gardner, Poor & Havens, ______________________ ______________________________ Francis X. Byrn, Jeanne-Marie Downey, Roberts, Carroll, Feldstein & ________________ ____________________ ______________________________ Peirce and Dennis Roberts were on brief for appellees. ______ ______________ ____________________ June 22, 1994 ____________________ ____________________ *Chief Judge Stephen Breyer heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). CYR, Circuit Judge. This admiralty action stems from a CYR, Circuit Judge. _____________ late evening boating accident which resulted in serious injuries to plaintiffs-appellants. Although plaintiffs obtained default judgments against the operator of the boat in which they were riding at the time of the accident, the district court directed entry of judgment as a matter of law in favor of defendant- appellee Pendragon Marine Ltd., the owner of the boat, and the plaintiffs appealed. Finding no error, we affirm. I I BACKGROUND BACKGROUND __________ The S/Y DOLPHIN, a 75-foot sailing sloop, was moored in Newport Harbor for the 1990 charter season. She was crewed by Captain Gordon Percy, defendant Nicholas Pannell, the engineer, and Robert Sass, deckhand. On Friday, July 27, 1990, Captain Percy disembarked for a weekend in Cape Cod, leaving defendant Pannell in charge. Prior to disembarking, Percy instructed Pannell that he was not to bring guests aboard the yacht, the DOLPHIN's 12-foot inflatable tender was to be left on deck, and the public launch service (for which the DOLPHIN held a season's pass) was to be used for conveyance between the yacht and shore. Appellants Christine Favorito and Lenka Viducic arrived in Newport the same day. As fate would have it, come evening 2 2 Favorito and Viducic met defendant Pannell, who invited them and a third woman aboard the DOLPHIN for a party. Shortly after reaching the DOLPHIN via the public launch service, appellants asked to be returned to shore. By this time it was after midnight and the public launch service was no longer operating. Disregarding Captain Percy's orders, Pannell offered to ferry appellants to shore in the 12-foot inflatable tender. En route, the inflatable collided with two other vessels moored in the harbor. Investigators opined that Pannell had been operating the tender at an excessive speed. Favorito suffered facial lacerations and a broken jaw. Viducic received back injuries and a laceration to the forehead. Both required extensive reconstructive and cosmetic surgery. Appellants instituted the present action in the District of Rhode Island against Pannell and appellee Pendragon Marine Ltd. In due course, the case came to trial.1 On motion by Pendragon, the district court withdrew the case from the jury at the conclusion of plaintiffs-appellants' case and directed entry of judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1) on the ground that no rational jury could find against Pendragon on any of the three causes of action. ____________________ 1Although duly served, Pannell failed to appear; default judgments were obtained by Favorito ($250,000) and Viducic ($100,000). 3 3 II II DISCUSSION DISCUSSION __________ A judgment entered as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1) is subject to plenary review under the same stringent standard incumbent upon the trial court in the first instance: [W]e must examine the evidence and the inferences reasonably extractable therefrom in the light most hospitable to the nonmovant. To affirm withdrawal of any claim from the jury, we must find that, so viewed, the evidence would permit thoughtful factfinders to reach but one reasoned conclusion. Fashion House, Inc. v. K-Mart Corp., 892 F.2d 1076, 1088 (1st ___________________ _____________ Cir. 1989).2 A. Negligent Retention A. Negligent Retention ___________________ The first cause of action we address is a variant on the traditional tort of negligent hiring: "an employer has a [continuing] duty to retain in its service only those employees ______ who are fit and competent." Welsh Manuf. v. Pinkerton's, Inc., ____________ _________________ ____________________ 2Absent a federal liability scheme, the governing substantive law in an admiralty action is drawn from common law tort principles which comport with the tenets of maritime law. Lyon v. RANGER III, 858 F.2d 22, 27 (1st Cir. 1988). Rhode ____ ___________ Island provides the principal source of tort law relating to an accident within its coastal waters. See id. (Massachusetts law ___ ___ applies to accident 1/4 mile off Cape Cod). Ultimately, of course, federal common law supersedes a particular state law formulation with which it conflicts. Puerto Rico v. SS ZOE ____________ ______ COLOCOTRONI, 628 F.2d 652, 672 (1st Cir. 1980), cert. denied, 450 ___________ _____ ______ U.S. 912 (1981). 4 4 474 A.2d 436, 441 (R.I. 1984) (emphasis added) (citing, e.g., ____ DiCosala v. Kay, 450 A.2d 508 (N.J. 1982)). An employer is not ________ ___ responsible for employee torts committed outside the scope of employment unless the employer (1) had "reason to know of the particular unfitness, incompetence or dangerous attributes of the __________ employee" and (2) "could reasonably have foreseen that such ____ qualities created a risk of harm to other persons." DiCosala, _________ ________ 450 A.2d 516 (emphasis added); accord Johnson v. Usdin Louis Co., ______ _______ _______________ 591 A.2d 959, 961 (N.J. 1991). One week after joining the DOLPHIN's crew, defendant Pannell was stopped by the Harbormaster for exceeding the 5 m.p.h. speed limit in Newport Harbor, and received a warning. On June 27, Pannell again was stopped for exceeding the 5 m.p.h. limit, and received a ticket. The next day Captain Percy was summoned to the Harbormaster's office, where he was informed that it was his responsibility to ensure that his crew adhered to harbor rules, and that further infractions could result in the DOLPHIN's exclusion from Newport Harbor. Captain Percy in turn delivered a stern lecture to Pannell and Sass. There were no further incidents, and the record contains no evidence of recklessness or other unreliability on the part of Pannell, until the date of the accident approximately one month later. Indeed, Percy testified that he had been pleased with Pannell's overall performance and described Pannell 5 5 as a good engineer and a responsible crewman. Appellants presented no evidence to the contrary. Appellants contend that a jury could reasonably have found that Captain Percy was negligent to retain Pannell after learning of the two speeding incidents, and they insist that dismissal from employment was Pendragon's only recourse. We conclude, however, that the district court judgment is amply supported by the record evidence viewed in the light most favorable to appellants. Appellants do not identify, let alone consider, the particular employee qualities most pertinent to their negligent retention claim. This would be a very different case were the appropriate inquiry (as appellants would have it) whether Captain Percy had reason to believe that Pannell might speed in the harbor. However, the proper threshold inquiry the sine qua ____ ___ non to appellants' negligent retention claim is whether there ___ _________ _________ is any evidence that Captain Percy had "reason to know," see ___ DiCosala, 450 A.2d 516, that Pannell might misappropriate the ________ DOLPHIN's tender for personal use in direct violation of the Captain's order.3 ____________________ 3Careful scrutiny exposes as pure speculation appellants' allegations that Pannell violated other orders given by Captain Percy. For example, appellants point out that both times Pannell was stopped for speeding in the harbor it was after 6:00 p.m. Consequently, they speculate, Pannell's use of the boat on both those occasions must have been in violation of Captain Percy's orders because Pannell was using the boat after hours. However, Captain Percy testified, without contradiction, 6 6 It would not be reasonable to infer based solely on the two speeding incidents that Captain Percy should have foreseen, see id., that Pannell would disobey a direct order by ___ ___ transporting personal guests in the DOLPHIN's tender during the Captain's absence. And absent any evidence that it was not reasonable for Captain Percy to rely on the adequacy of the ____ precautions taken before disembarking, the prior speeding incidents did not give rise to a reasonably foreseeable "risk of harm to other persons," id., and the negligent retention claim ___ fails as a matter of law. The district court correctly rejected the position that an employee must be dismissed in such circumstances without regard to the adequacy of the employer's precautions against a recurrence of the relevant employee conduct. See Usdin Louis, ___ ___________ 591 A.2d at 961-62. "Public policy dictates that there should be no liability absent a showing that the employer reasonably should have foreseen an unreasonably enhanced hazard." Id. We hold that ___ a negligent retention claim does not lie absent sufficient _________ _________ evidence to enable a rational factfinder to infer that the employer reasonably should have foreseen that its precautions ____________________ that the crew was allowed to use the tender or dinghy (1) during working hours; (2) on ship's business; or (3) at any other time with his express permission. There is no evidence whatever that Pannell violated Percy's orders on either occasion, nor that those incidents took place "outside working hours," let alone involved nonbusiness or unauthorized purposes. Thus, the record is devoid of evidence that Pannell ever disobeyed an order prior ______ to the night of the accident. 7 7 were inadequate to protect persons in appellants' position from an unreasonable risk of harm resulting from a recurrence of the employee behavior of which the employer had prior notice. B. Negligent Entrustment B. Negligent Entrustment _____________________ The second cause of action asserts that Pendragon negligently entrusted the tender to Pannell. Rhode Island essentially hews to the common law rule, see Sabourin v. LBC, ___ ________ ____ Inc., 731 F. Supp. 1145 (D. R.I. 1990) (surveying Rhode Island ____ law), that "the owner . . . may be held liable for entrusting [its] vehicle to an incompetent, reckless or unfit driver if the owner knew or should have known of the driver's incompetence, inexperience or recklessness." Id. at 1148.4 A rational ___ factfinder could find no entrustment on this evidence. ____________________ 4This articulation comports with the Restatement: It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others. Restatement (Second) of Torts 308 (1965). See also Restatement _____________________________ ___ ____ ___________ (Second) of Torts 390 (1965) ("One who supplies directly or _________________ through a third person a chattel for the use of another whom the supplier knows to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should ____ ___ ________ ______ expect to share in or be endangered by its use, is subject to ______ __ _____ __ __ __ __________ __ ___ ___ liability for physical harm resulting to them.") (emphasis added). 8 8 Appellants focus almost exclusively on whether it was negligent for Captain Percy to entrust the tender to Pannell, when in fact there was no entrustment, negligent or otherwise. There is no evidence that Captain Percy permitted Pannell to use __ _________ the tender in his absence. Rather, the uncontroverted deposition ______________ testimony of Captain Percy established that he prohibited guests, directed Pannell to utilize the public launch service, and forbade use of the DOLPHIN's tender or dinghy.5 Were it not for the unusual procedural posture, our discussion of the negligent entrustment claim would be at an end. It was appellants who introduced Captain Percy's deposition into evidence, notwithstanding the fact that it cut sharply against their negligent entrustment claim. On appeal, however, appellants urge us to vacate the district court judgment because the jury might have disbelieved Captain Percy's deposition testimony. In other words, appellants argue, judgment as a matter of law was improper because the jury might not have believed that Percy forbade Pannell to use the tender. The Supreme Court has pointed out that Rule 50 (judgment as a matter of law) and Rule 56 (summary judgment) "mirror" one another. Anderson v. Liberty Lobby, Inc., 477 U.S. ________ ___________________ ____________________ 5Asked why he had not taken the key to the tender's engine when he left, Captain Percy responded: "The answer is I left it for safety reasons as well as the fact that . . . if I felt that they would have used the dinghy, I wouldn't have trusted them. I wouldn't have left the boat [in the first place]." 9 9 242, 250 (1986). See also Fed. R. Civ. P. 50 advisory ___ ____ committee's notes accompanying 1991 amendment (stating that incorporation of the Rule 56 "judgment as a matter of law" standard into Rule 50 was intended to "link the[se] two related provisions"). It is well established that "a mere challenge to the credibility of a movant's witnesses without any supporting evidence" does not raise a trialworthy issue of fact. Moreau v. ______ Local Union No. 247, 851 F.2d 516, 519 (1st Cir. 1988) (citing ____________________ Anderson, 477 U.S. at 256); Blanchard v. Peerless Ins. Co., 958 ________ _________ __________________ F.2d 483, 490 (1st Cir. 1992) (noting: nonmovant must demonstrate "genuine dispute" as to credibility in order to resist summary judgment); 10A Charles A. Wright, et al., Federal _______ Practice and Procedure: Civil 2726, at 119 (2nd ed. 1983) _______________________________ ("[S]pecific facts must be produced in order to put credibility in issue . . . [u]nsupported allegations . . . will not suffice."). As the Supreme Court explained in Anderson v. ________ Liberty Lobby: _____________ Respondents argue, however, that . . . the defendant should seldom if ever be granted summary judgment where . . . the jury might disbelieve him or his witnesses . . . . They rely on Poller v. Columbia Broadcasting Co., ______ __________________________ 368 U.S. 464, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962), for this proposition. We do not understand Poller, however, to hold that a ______ plaintiff may defeat a defendant's properly supported motion for summary judgment in a conspiracy or libel case, for example, without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, 10 10 disbelieve the defendant's denial of a conspiracy or of legal malice. The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is ___ _________ __ not thereby relieved of his own burden of ___ _______ ________ __ ___ ___ ______ __ producing in turn evidence that would support _________ __ ____ ________ ____ _____ _______ a jury verdict. Rule 56(e) itself provides _ ____ _______ that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. 477 U.S. at 256 (emphasis added). Thus, we think it clear under Rule 50, as in the summary judgment context, that a bare assertion that the opposing ____ _________ party's uncontroverted evidence might be disbelieved is insufficient to resist judgment as a matter of law on an issue as to which the party resisting judgment bears the burden of proof. See, e.g., Niemann v. Rogers, 802 F. Supp. 1154, 1157 (D. Del. ___ ____ _______ ______ 1992) (noting that plaintiff bears burden of proving entrustment element in negligent entrustment claim). Were it otherwise, Rules 50 and 56 could be rendered virtually useless, merely on the strength of a nonmovant's supposition that the movant's uncontroverted evidence might be disbelieved. The authorities are in substantial accord that "where the alleged entrustor has prohibited the entrustee from operating the automobile or using the instrumentality in question, there is no responsibility because there has been no entrustment." J.D. Lee & Barry A. Lindahl, Modern Tort Law 33.01 (Rev. ed. 1988) _______________ (citing Farney v. Herr, 358 S.W.2d 758, 761 (Tex. 1962) ("The ______ ____ 11 11 doctrine of negligent entrustment may not be so extended as to impose liability upon the alleged 'trustor' for the negligent operation of a vehicle which he had expressly forbidden the alleged 'trustee' to drive.")); Kimble v. Muller, 417 P.2d 178 ______ ______ (Wyo. 1966) (upholding summary judgment in favor of defendant on negligent entrustment claim where defendant father had instructed his reckless-driving son not to use automobile except for travel to and from work and school, but left the vehicle at home with the son when the father worked the night shift). In sum, appellants' negligent entrustment claim founders on the uncontroverted testimony that Captain Percy specifically ordered Pannell not to use the tender during his absence. As appellants relied entirely on the totally unsupported speculation that a jury might disbelieve Captain Percy's uncontroverted testimony, the district court properly granted judgment as a matter of law. C. Respondeat Superior C. Respondeat Superior ___________________ The third cause of action asserts that Pendragon is vicariously liable for appellants' injuries under the doctrine of respondeat superior. See Sabourin, 731 F. Supp. at 1149 (under __________ ________ ___ ________ Rhode Island law, a corporation is liable for "torts committed by agents acting within the scope of their authority or in the course of their employment"); accord Drake v. Star Market Co., ______ _____ ________________ 526 A.2d 517, 518 (R.I. 1987). As the district court correctly ruled, there is no conceivable evidentiary basis for respondeat __________ 12 12 superior liability on the part of Pendragon. The uncontroverted ________ trial evidence established beyond peradventure that Pannell was on a frolic and banter of his own, actuated by no employer mission whatever and in direct violation of Captain Percy's explicit instructions not to use the tender and not to bring guests aboard the DOLPHIN. See Restatement (Second) of Agency ___ _______________________________ 228(1)(c) (1958); see also, e.g., Gill Plumbing Co. v. Macon, ___ ____ ____ _________________ _____ 370 S.E.2d 657 (Ga. Ct. App. 1988) (upholding summary judgment disallowing respondeat superior claim where employee was driving __________ ________ company vehicle on a "purely personal mission," without authorization). D. Miscellaneous Orders D. Miscellaneous Orders ____________________ Appellants attempted at trial to introduce portions of Captain Percy's videotape deposition which probed various hypothetical circumstances in which he might have considered it appropriate to discharge a crew member. Appellants correctly point out that we have said that relevant hypothetical questions may be put to lay witnesses subject to the Rule 403 balancing test. See, e.g., United States v. Ranney, 719 F.2d 1183, 1187-89 ___ ____ _____________ ______ (1st Cir. 1983). Appellants, however, would construe our case law as declaring "open season" for hypothetical questions without regard to their overriding prejudice, cumulativeness and the 13 13 like.6 A review of the Percy deposition satisfies us that the district court carefully exercised its Rule 403 discretion by sustaining most, though not all, objections interposed by Pendragon. Lastly, appellants challenge the denial of their belated motion to amend their complaint to name Parker Montgomery, beneficial owner of the DOLPHIN, and the Montgomery Group, as party defendants. Appellants represent that they were unable to comply with the March 12, 1993 deadline for amending the complaint because they did not learn that Montgomery was the beneficial owner until after Captain Percy's deposition in June 1993. On the contrary, appellants acknowledged in their district court pleadings that they first became aware of Parker Montgomery's role in October 1992. Notwithstanding the admonition that leave to amend is to be "freely given," Fed. R. Civ. P. 15, the district court did not abuse its discretion in these circumstances, see Johnston v. Holiday Inns, Inc., 595 F.2d ___ ________ __________________ 890, 896 (1st Cir. 1979), especially since there has been no showing of prejudice. Affirmed. Affirmed. ________ ____________________ 6But see Fed. R. Evid. 403 ("Although relevant, evidence may ___ ___ be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). 14 14