USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1835 RICHARD MAHAN and FELICIA MAHAN, Plaintiffs, Appellants, v. PLYMOUTH COUNTY HOUSE OF CORRECTIONS, ET AL., Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________  ____________________ Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________  ____________________ Matthew Cobb, with whom Law Firm of Matthew Cobb was on brief for ____________ ________________________ appellants. James B. Lampke for appellee Town of Hull. _______________ Matthew J. Buckley, with whom Law Office of Matthew J. Buckley ___________________ _________________________________ was on brief for appellee Walter Bouchie. Steven M. Walsh for appellee Plymouth County Sheriff's __________________ Department.  ____________________ September 7, 1995  ____________________ CYR, Circuit Judge. On November 14, 1989, Walter CYR, Circuit Judge. ______________ Bouchie, a detective with the Town of Hull Police Department ("Hull Police Department"), executed a valid arrest warrant against plaintiff-appellant Richard Mahan ("Mahan") for the rape of Sheila Commesso.1 The arrest took place in Mahan's hatchback automobile. Bouchie and other officers searched the hatchback incident to the arrest and damaged a cord over the hatch area and a pocket tape recorder in the car.  Following the arrest, Mahan was taken to the Hull Police Station for "booking." Once the "booking" had been completed, Bouchie began interrogating Mahan without giving Miranda warnings. See Miranda v. Arizona, 384 U.S. 436 (1966). _______ ___ _______ _______ Mahan asked if he had the right to speak with an attorney. Bouchie informed him that an attorney would be appointed at arraignment. Mahan asserted a right to remain silent until an attorney was present. Bouchie then said, "[Y]ou are going to talk to me or I will lock you up in that cell down there, and you won't get out." When Mahan would not relent, he was placed in the holding cell. No further questioning occurred.  Within hours of the arrest, a representative of the Hull Police Department was sent to Mahan's home to pick up a bottle of medicine Tegretol which had been prescribed in early 1989 for depression and seizures caused by a head injury  ____________________ 1The evidence and inferences are related in the light most favorable to Mahan, the party opposing judgment. See Favorito v. ___ ________ Pannell, 27 F.3d 716, 719 (1st Cir. 1994); Fed. R. Civ. P. 50(a); _______ Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, 874 (1st Cir. ___________ ____________________ 1993); Fed. R. Civ. P. 56.  3 Mahan sustained many years earlier. The Tegretol bottle, clearly marked with Mahan's name, the name and telephone number of the prescribing physician, and the dosage to be administered, was delivered to the Plymouth House of Corrections ("PHC") when Mahan was transferred there around 9:00 or 10:00 p.m. on Tuesday, November 14. There is no record evidence that Mahan informed any corrections officer or other PHC personnel, prior to November 21, as to the actual symptoms he experienced while detained. The PHC corrections officers repeatedly refused Mahan's requests for Tegretol during the period November 14-21.2  Mahan first arrived at PHC late Tuesday evening, November 14, after the medical officer's regular hours. PHC corrections officers later informed Mahan that a medical officer was present at PHC on Tuesdays and Thursdays only. On November 15 and 16, Mahan was taken to court for arraignment and bail review. Thus, he was not seen by a medical officer on Thursday, November 16, since he did not return from court until after the medical officer had left for the day. Four more days passed before a medical officer met with Mahan on Tuesday, November 21. In accordance with PHC policy, the medical officer declined to administer Tegretol to Mahan without first contacting the pre- scribing physician. Within one or two days after Mahan met with the medical officer on November 21, PHC administered the Tegretol  ____________________ 2PHC policy prohibits administering prescription medicines to a detainee without clearance from a "medical officer" and on ___ days the detainee is scheduled to appear in court. Medical officers are corrections officers with some medical training. 4 to Mahan and his symptoms were alleviated.  Although Mahan was experiencing severe depression and anxiety attacks, and continuously complained to various correc- tions officers that he needed the Tegretol, there is no record evidence that he ever informed PHC personnel that he was experi- encing these or any other symptoms prior to November 21. Nor is there any evidence that PHC personnel ever witnessed, or other- wise became aware of, any such symptoms. Mahan testified to an anxiety attack on the night of November 15, which was witnessed by a cellmate.3 A guard who happened by the cell shortly after this incident, inquired whether Mahan was all right. To which Mahan replied simply: "I don't know. I don't feel good." Thus, there is no evidence remotely suggesting that PHC personnel had ever been made aware that Mahan's condition might warrant any deviation from the standard medical clearance policy.  After Mahan was released on bail, he was tried and acquitted, then initiated this section 1983 action, see 42 U.S.C. ___ 1983, against Detective Bouchie and the Town of Hull for wrongful arrest and interrogation, and against PHC for wrongfully withholding his prescription medicine. Felicia Mahan filed a pendent claim for loss of consortium. Prior to trial, the district court granted summary judgment for the Town of Hull.  ____________________ 3The cellmate neither testified nor provided a deposition concerning the circumstances surrounding any anxiety attack or other symptom experienced by Mahan. Mahan himself testified that he asked his wife to tell his lawyer that PHC personnel were refusing to administer Tegretol. Yet the lawyer neither testi- fied nor is there any evidence that he ever contacted PHC.  5 The Mahans proceeded to trial on their claims against Bouchie and PHC.  During the trial on liability, Mahan and/or his wife testified to the above-described events. In addition, before the district court ordered judgment as a matter of law under Rule 50(a), Mahan proposed to call the prescribing physician, to testify that Mahan had a "serious medical need" for Tegretol. Rather than admit the proffered testimony, the district court presumed, for purposes of the Rule 50(a) motion, that Mahan had a "serious medical need" for Tegretol.  Thereafter, the district court directed verdicts for Bouchie and PHC, ruling that Mahan had proffered insufficient evidence to establish an unconstitutional deprivation in connec- tion with his arrest; the Miranda claim failed as a matter of _______ law, since no interrogation actually occurred after Mahan re- quested an attorney; and PHC had not acted with "deliberate indifference" in withholding Mahan's prescription medicine.  A decision to grant summary judgment is reviewed de __ novo, Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, 874 (1st ____ ___________ ____________________ Cir. 1993), as is a judgment entered as a matter of law, Favorito ________ v. Pannell, 27 F.3d 716, 719 (1st Cir. 1994).  _______ A. The Arrest A. The Arrest __________ Under section 1983, a municipality may be answerable in damages under section 1983 to a person who is subjected to a deprivation of his constitutional rights as a result of official action taken pursuant to a "custom or usage" of the municipality. 6 See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, ___ ______ ____________________________________ 691 (1978). Mahan claims that there was sufficient evidence that the Town of Hull, by "custom and usage," investigated criminal complaints inadequately, thereby causing arrests without probable cause. He relies on our decision in Bordanaro v. McLeod, 871 _________ ______ F.2d 1151, 1157 (1st Cir.) (single incident may provide some ______ ________ ____ proof of municipal policy where, inter alia, large contingent of _____ ____ municipal police officers engaged in concerted assaultive con- _________ duct), cert. denied, 493 U.S. 820 (1989). Bordanaro held, _____ ______ _________ however, that evidence of a single incident is insufficient, in __ and of itself, to establish a municipal "custom or usage" within ___ __ ______ the meaning of Monell. Id. at 1156-57.  ______ ___ Mahan has not brought his case near the Bordanaro _________ umbrella, let alone under it. He produced no evidence of prior incidents of inadequate investigation by the Hull Police Depart- ment. Nor has he introduced direct evidence of improper investi- gatory methods or practices employed by the police in this case. Thus, we discern no error in the district court decision granting summary judgment on the section 1983 claim against the Town of Hull.  B. The Arrest and Search B. The Arrest and Search _____________________ As there was insufficient evidence to support a trial- worthy claim against the Town of Hull, there was no actionable section 1983 claim against Detective Bouchie relating to Mahan's arrest. Mahan presented no evidence that Bouchie acted unreason- ably in executing the valid arrest warrant, nor in effecting the 7 arrest and contemporaneous automobile search. See United States ___ _____________ v. Doward, 41 F.3d 789, 791 (1st Cir. 1994) (police entitled to ______ search hatch-area of automobile incident to lawful arrest of driver), cert. denied, 115 S. Ct. 1716 (1995). The damage to the _____ ______ hatchback cord and the tape recorder, see supra p. 2, do not ___ _____ establish a trialworthy Fourth Amendment "unreasonable" search claim. There was no error in the district court decision to direct judgment as a matter of law in favor of Bouchie.  C. The Miranda Claim C. The Miranda Claim _________________ Mahan claims that Bouchie violated his Miranda rights _______ by refusing to read the required Miranda warnings and threatening _______ to place him in the holding cell if he declined to respond to questioning without an attorney present. We do not agree.  An "accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." Miranda, 384 U.S. at 467. Although Bouchie did not _______ give the required Miranda warnings, it is undisputed that Mahan _______ made no statements pertinent to the Commesso investigation in response to interrogation. Upon Mahan's assertion that he wished to have an attorney present during interrogation, Bouchie ceased all interrogation. Every court of appeals which has spoken to this matter in similar circumstances has held that no actionable section 1983 claim lay. See Weaver v. Brenner, 40 F.3d 527, 535 ___ ______ _______ (2d Cir. 1994); Wiley v. Doory, 14 F.3d 993, 996 (4th Cir. 1994) _____ _____ (Powell, J., sitting by designation); Mahoney v. Kesery, 976 F.2d _______ ______ 1054, 1061-62 (7th Cir. 1992); Cooper v. Dupnik, 963 F.2d 1220, ______ ______ 8 1242-44 (9th Cir.), cert. denied, 113 S. Ct. 407 (1992); Warren _____ ______ ______ v. City of Lincoln, Neb., 864 F.2d 1436, 1442 (8th Cir.), cert. _____________________ _____ denied, 490 U.S. 1091 (1989); Bennett v. Passic, 545 F.2d 1260, ______ _______ ______ 1263 (10th Cir. 1976). We now join their ranks. There was no actionable section 1983 claim relating to the alleged Miranda _______ violation.4 D. The Eighth Amendment Claim D. The Eighth Amendment Claim __________________________ Mahan challenges the district court ruling directing judgment as a matter of law on the claim that PHC refused to administer his Tegretol for seven days. This claim implicates the established PHC clearance policy preventing corrections officers from administering prescribed medicines on days the detainee is scheduled to appear in court and until permitted to ___ do so by a "medical officer."  Eighth Amendment claims by pretrial detainees alleging denials of medical assistance essentially turn on whether the challenged official action constituted "deliberate indifference" to a "serious medical need". Consolo v. George, 58 F.3d 791, _______ ______ 793-94 (1st Cir. 1995); Bowen v. City of Manchester, 966 F.2d 13, _____ __________________  ____________________ 4Although there can be no question that the alleged threat by Bouchie to keep Mahan in the holding cell until he responded to further questions assuming it were credited by the fact- finder would be fully deserving of official sanction, it did not rise to the egregious level of police misconduct required for an actionable 1983 claim absent evidence that it succeeded in overbearing Mahan's will to exercise his Miranda rights. Cf. _______ __ Cooper, 963 F.2d at 1240-50 (police who engaged in conduct that ______ "shocks the conscience," by attempting to "grill [suspect] until he confessed," and questioning him for thirty minutes despite assertion of right to counsel, are subject to liability under  1983 even though defendant does not incriminate himself).  9 17 n.13 (1st Cir. 1992). A "serious medical need" is one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Munici- __________ _______ pality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. ______________________ _____ denied, 500 U.S. 956 (1991). The prescription indicated, and the ______ district court assumed, that Mahan needed, and would benefit from, Tegretol. The record thus established a serious medical need.5  As the district court found, however, the record does not establish a trialworthy claim that PHC was "deliberately indifferent" to Mahan's "serious medical need." The Supreme Court recently defined "deliberate indifference" in the prison context. See Farmer v. Brennan, 114 S. Ct. 1970 (1994). In ___ ______ _______ order to be found "deliberately indifferent," prison officials must be shown to have been subjectively aware of a condition ____________ requiring their intervention. Id. at 1980-82. The evidence in ___ this case established one component of the "subjective awareness" requirement; viz., PHC corrections officers were well aware that Tegretol had been prescribed for Mahan, and that he repeatedly requested it.  Nevertheless, the record on appeal contains no evidence  ____________________ 5PHC argues that the district court ruling should be af- firmed on the ground that Tegretol would not have alleviated Mahan's anxiety attacks. Given the presumption of "serious medical need" apparently indulged by the district court, which obviated the necessity for Mahan's prescribing physician to testify, see supra p. 4, we must reject this suggestion.  ___ _____ 10 from which a rational factfinder could conclude that PHC person- nel were informed, or otherwise learned, of the serious symptoms Mahan actually experienced while detained, such as would have made them subjectively aware of a condition requiring their intervention prior to November 21. Id. at 1980-82; cf. Miranda ___ __ _______ v. Munoz, 770 F.2d 255, 257-59 (1st Cir. 1985) (acknowledging _____ that prison officials knew pretrial detainee's epilepsy not under control). Absent evidence of subjective awareness, there could be no "deliberate indifference" to Mahan's serious medical need. Farmer, 114 S. Ct. at 1980-82. Consequently, the Eighth Amend- ______ ment claim failed as a matter of law. See United States v. John ___ _____________ ____ Doe, a/k/a Pizarro-Calderon, No. 94-1096, slip op. at 11-12 (1st ___________________________ Cir. Aug. 4, 1995) (appellate court may affirm district court ruling on any ground supported in record).  Our ruling should not be misconstrued as condoning the status quo, however, but merely as indicating that PHC cannot be held liable for failing to adjust its policy to accommodate a "serious medical need" of which it was not made aware.6 In these circumstances, Mahan simply failed to introduce evidence essential to enable a reasonable factfinder to conclude that PHC violated his Eighth Amendment rights.  The district court judgment is affirmed. All parties ________  ____________________ 6We add that the seemingly inflexible PHC policy relating to prescription medicines, coupled with the limited "medical offi- cer" hours, could well have resulted in serious harm to Mahan during the extended and stressful period the medicine needed to control his previously diagnosed condition was withheld. See ___ Miranda, 770 F.2d at 259 (detainee died after epileptic seizure). _______  11 shall bear their own costs.  12