**Stephanie B. BARRETT, Individually, and as Administratrix of the Estate of Robert C. Barrett, Deceased, and as Natural Mother and Next Friend of Madison Hope Barrett, a Minor, Plaintiff,**

v.

**AMBIENT PRESSURE DIVING, LTD., Silent Diving Systems LLC, Cliff Simoneau, Michael Fowler, John Garvin, 02 Technical Diving, Inc., Teledyne Technologies Incorporated, Teledyne Analytical Instruments, C2 Educational Expeditions, Technical Diving International, Dolphino's and John Does 1–5, Defendants.**

No. 04–CV–03550.

United States District Court, E.D. Pennsylvania.

March 31, 2006.

John T. O'Connell, Samuel Hankin, Edward J. Greene, for Plaintiff.

David G. Concannon, Wayne, PA, for Defendants Ambient Pressure Diving, Ltd., Silent Diving Systems LLC, Cliff Simoneau, Michael Fowler, C2 Educational Expeditions and Technical Diving International.

Jeffrey P. Bates, Walter P. Deforest, for Defendants Teledyne Technologies Incorporated and Teledyne Analytical Instruments.

Randy C. Greene, for Defendant Dolphino's.

## OPINION

GARDNER, District Judge.

This matter is before the court on three separate motions to dismiss plaintiff's Amended Verified Complaint filed May 24, 2005. Defendants Ambient Pressure Diving, Ltd.; Silent Diving Systems, LLC; Cliff Simoneau; Michael Fowler; C2 Educational Expeditions ("C2") and Technical Dive International (collectively "the Ambient defendants") filed a motion to dismiss on May 31, 2005. Defendant Dolphino's Scuba, Inc. ("Dolphino's") filed a motion to dismiss on June 21, 2005. Defendants Teledyne Technologies Incorporated and Teledyne Analytical Instruments (collectively "the Teledyne defendants") filed a motion to dismiss on June 10, 2005.

Plaintiff Stephanie Barrett filed responses to each of the three motions to dismiss. In addition, on September 1, 2005, following the completion of jurisdictional discovery, plaintiff filed a supplemental memorandum in opposition to all of the motions to dismiss. Argument was held on the motions to dismiss on September 1, 2005.

Moreover, on August 31, 2005 plaintiff filed Plaintiff's Motion to Transfer to Cure Want of Jurisdiction Pursuant to 28 U.S.C. § 1631. Three separate memoranda in opposition to plaintiff's motion to transfer were filed by defendants on September 16 and 20, 2005.[1]

For the reasons stated below, we grant plaintiff's motion to transfer and dismiss the three motions to dismiss as moot.

## JURISDICTION AND VENUE

Jurisdiction in this case is based upon diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1367. Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to plaintiff's claims allegedly occurred in Lancaster County, Pennsylvania, which is in this judicial district.

## FACTS

Based upon the allegations contained in the Amended Verified Complaint, which we must accept as true for the purposes of this motion, the operative facts are as follows.[2]

Plaintiff Stephanie B. Barrett brings suit in her individual capacity, as Administratrix of the Estate of Robert C. Barrett, and as natural mother and next friend of Madison Hope Barrett, a minor.[3] Plaintiff asserts

---

1. Plaintiff's August 31, 2005 motion to transfer was not addressed at the September 1, 2005 argument because defendants had not had adequate time to prepare.

2. For the purpose of our recitation of the facts we have only considered the allegations contained in plaintiff's Amended Verified Complaint filed May 24, 2005. However, in disposing of defendants' motions to dismiss and plaintiff's motion to transfer, we have also considered the record papers, affidavits, depositions and exhibits submitted in connection with those motions.

3. Unless the context indicates otherwise, references to Stephanie Barrett as the plaintiff, singular, throughout this Opinion will refer to her in each of the three distinct capacities in which she is acting as plaintiff (individually, Administratrix, and natural guardian). All of the documents filed by the parties refer to a single plaintiff, and

several causes of action, including negligence, products liability, breach of warranty, consumer protection, personal injury and wrongful death. Plaintiff's claims arise from the death of her husband, Robert C. Barrett, on August 3, 2002 while scuba diving in a quarry in Bainbridge, Lancaster County, Pennsylvania.

Robert Barrett was a highly experienced scuba diver who had earned numerous certifications and acted as a scuba diving instructor. On February 15, 2002, Mr. Barrett entered into a contract to purchase an Inspiration rebreather[4] and Inspiration training course from defendant Cliff Simoneau.[5]

On February 19, 2002 Mr. Barrett made a credit card payment to defendant Dolphino's for a portion of the purchase price of the Inspiration rebreather and related training, each purchased from Mr. Simoneau. Mr. Barrett was aware, however, that he could not take possession of his Inspiration rebreather until he had obtained certification in its proper use.[6]

Accordingly, Mr. Barrett attended the training arranged by Mr. Simoneau. The training course was conducted by defendant John Garvin, an employee of defendant O2 Technical Diving, Inc. ("O2"). Mr. Barrett received a Technical Diving International ("Technical Diving") Inspiration Certification from Mr. Garvin on March 11, 2002.[7]

On April 21, 2002 and again on May 26, 2002, Mr. Barrett made additional credit card payments to Dolphino's for his Inspiration rebreather and training. Mr. Simoneau also received two additional payments from Mr. Barrett in the form of checks on July 26, 2002.[8]

Mr. Barrett took possession of his rebreather on June 6, 2002 in Ontario, Canada. Mr. Barrett received his Inspiration rebreather at Abucs Scuba Group, Inc., the address of which business was also listed in conjunction with the domain name "silentdiving.com." Plaintiff alleges that, although Silent Diving Systems ("Silent Diving") may not have been incorporated at this time, defendants Michael Fowler and Cliff Simoneau had registered the "silentdiving.com" domain name and were already doing business as Silent Diving.[9]

On August 3, 2002 Mr. Barrett died while diving at the Bainbridge Sportsman's Club, located in Lancaster County, Pennsylvania. Mr. Barrett was using his Inspiration rebreather at the time of his death.[10]

Later that day, after learning of Mr. Barrett's death, Mr. Simoneau contacted the Susquehanna Regional Police Department and informed them that he had sold the Inspiration rebreather to Mr. Barrett. Mr. Simoneau provided instructions for shutting down the rebreather.[11]

The following day, August 4, 2002, Mr. Fowler arrived in Bainbridge and offered to the Susquehanna Regional Police Department his assistance in examining Mr. Barrett's rebreather, as an "instructor/trainer" of the Inspiration rebreather. Mr. Fowler

---

we will follow suit for the sake of clarity and consistency.

4. A rebreather is an underwater breathing device which allows a diver while underwater to breathe a consistent volume of the same air by passing exhaled gas through a system that removes carbon dioxide and adds oxygen. Rebreathers are closed-circuit systems, to be distinguished from open-circuit systems in which a diver's exhaled air is released into the water as bubbles. The Inspiration is one of several rebreather models manufactured by defendant Ambient.

5. A Suggestion of Death was filed regarding Mr. Simoneau on November 15, 2005.

6. Amended Verified Complaint, paragraphs 20, 33, 37.

7. Amended Verified Complaint, paragraphs 46, 47 and 54.

The issuance date of the certificate, according to the Amended Verified Complaint, was March 10, 2002. Amended Verified Complaint, paragraph 50.

8. Amended Verified Complaint, paragraphs 62, 64, 75 and 76.

9. Amended Verified Complaint, paragraphs 68, 69, 70, 72 and 74.

10. Amended Verified Complaint, paragraphs 99 and 100.

11. Amended Verified Complaint, paragraph 101.

then conducted "a two-day tear down examination" of Mr. Barrett's Inspiration unit, during which he washed and dried out the oxygen sensors and cleaned other components. Plaintiff was not notified that an examination of the rebreather was to be performed by Mr. Fowler.[12]

Subsequently, the rebreather was sent to the Navy Experimental Dive Unit for examination. The Navy Experimental Dive Unit was unable to draw any conclusions regarding the condition of the rebreather during Mr. Barrett's dive because, as a result of Mr. Fowler's examination, they did not receive the rebreather in its original condition.[13]

In connection with the events described above, plaintiff avers, among other things, that defendants provided a defective product and failed to properly warn Mr. Barrett about its dangers. In addition, plaintiff asserts that defendants failed to provide proper instruction and training with respect to the Inspiration rebreather.

Accordingly, plaintiff brings suit against the Ambient defendants, John Garvin, O2, the Teledyne defendants, Dolphino's and "John Does 1–5". Plaintiff alleges that each of these defendants was involved in the manufacture, instruction, or distribution of the decedent's Inspiration rebreather.[14]

### STANDARD OF REVIEW

Defendants' motions to dismiss set out three separate grounds for dismissal: lack of personal jurisdiction under Fed.R.Civ.P.

12(b)(2), failure to state a claim for which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6) and failure to join indispensable parties in accordance with Fed. R.Civ.P. 12(b)(7). Plaintiff moves to transfer to cure any want of jurisdiction pursuant to 28 U.S.C. § 1631.

Because we grant plaintiff's motion to transfer, we will address only defendants' jurisdictional contentions and the necessity of joinder of Mr. Barrett's diving team. We decline to address defendants' 12(b)(6) claims or their allegations regarding the indispensability of other parties because these issues may depend, in part, on the applicable state law, which may change following transfer.[15]

Rule 4(e) of the Federal Rules of Civil Procedure provides that personal jurisdiction over non-resident defendants is determined by the law of the state in which the district court is located. In Pennsylvania, the applicable jurisdictional statute is 42 Pa.C.S.A. § 5322, which provides in subsection (b) that Pennsylvania shall exercise jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." The effect of this statute is to allow Pennsylvania to assert personal jurisdiction to the extent permissible under the Due Process Clause of the United States Constitution. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984).

■ As a procedural matter, after a defendant has raised a jurisdictional defense, plaintiff has the burden of establishing that

**12.** Amended Verified Complaint, paragraphs 111, 113, 115 and 116. Of course, as of the day after her husband's death, plaintiff had not yet filed her lawsuit. Therefore, on August 4, 2004 neither Stephanie Barrett nor Michael Fowler had any discovery disclosure obligations.

**13.** Amended Verified Complaint, paragraphs 118 and 119.

**14.** Amended Verified Complaint, paragraphs 95, 96, 97, 124 and 131.

**15.** We address the indispensability of the dive team because each of Mr. Barrett's dive buddies is from Maryland, the plaintiff's domicile, and joining the dive buddies would necessarily defeat diversity and deprive a federal court of subject matter jurisdiction under 28 U.S.C. § 1332. The dive buddies, therefore, cannot be joined irrespective of whether they are subject to the juris-

diction of the New Hampshire district court. If the dive buddies are indispensable parties, transferring this case to New Hampshire would have no effect.

Joinder of the other defendants, in contrast, will hinge on whether they are subject to personal jurisdiction in New Hampshire. The New Hampshire district court is better situated than we are to make this jurisdictional determination because New Hampshire law will apply. In addition, jurisdictional discovery to date has focused on the Commonwealth of Pennsylvania, not the state of New Hampshire, so we lack a factual record on which to base a decision regarding jurisdiction in the transferee forum. Accordingly, we decline to decide whether the remaining defendants are necessary or indispensable under Rule 19.

the exercise of jurisdiction is permissible. *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991). If plaintiff succeeds in making a prima facie case for jurisdiction by demonstrating the existence of minimum contacts, the burden shifts back to defendant to show that the exercise of jurisdiction is nonetheless unconstitutional. *Mellon Bank v. Farino*, 960 F.2d 1217, 1226 (3d Cir.1992). If defendant fails to carry its burden at this stage of the proceedings, the United States Court of Appeals for the Third Circuit has stated that the case will not be one in which it is appropriate for the court to further consider factors relating to "fair play and substantial justice." *Mellon Bank*, 960 F.2d at 1227.

Defendants' motion to dismiss for failure to join indispensable parties pursuant to Fed.R.Civ.P. 12(b)(7) is governed by Rule 19 of the Federal Rules of Civil Procedure. Rule 19, which governs joinder of parties needed for just adjudication, is divided into two sections. Initially, the court decides under Rule 19(a) whether an absent party is necessary to the action. Then, if joinder of a necessary party is impossible, the court must determine whether, pursuant to Rule 19(b), the case may nonetheless proceed "in equity and good conscience." If the court decides under Rule 19(b) that the action may not proceed absent the necessary party, the case must be dismissed, the absentee having been deemed "indispensable." Fed.R.Civ.P. 19.

Plaintiffs' motion to transfer was made pursuant to 28 U.S.C. § 1631, which provides for transfer to cure want of jurisdiction.

Section 1631 permits transfer "in the interest of justice" to any court in which the action could have been brought at the time of the original filing.

## DISCUSSION

### Personal Jurisdiction

Initially, we note that three defendants have not contested jurisdiction in Pennsylvania. These defendants are Teledyne Technologies Incorporated, Teledyne Analytical Instruments (the Teledyne defendants) and Technical Diving International. In addition, two of the named defendants, John Garvin and O2, have not yet been served. Thus, we will not consider jurisdiction with respect to Mr. Garvin or O2.

Plaintiff contends that the remaining defendants are subject to specific jurisdiction in the Commonwealth of Pennsylvania.[16] Plaintiff argues, in support of jurisdiction, that the remaining defendants directed actions at this forum by selecting Mr. Barrett as a distributor of Ambient's Inspiration rebreather for the East Coast of the United States.[17] For the reasons stated below, we disagree with plaintiff's argument.

As stated above, Pennsylvania's long-arm statute allows for the exercise of jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. The United States Supreme Court has held that due process requires a non-resident defendant who is not present in the forum to

16. Plaintiff acknowledges that the defendants challenging jurisdiction are not subject to general jurisdiction in the courts of this Commonwealth. Plaintiff's Supplemental Memorandum in Opposition to All Defendants' Motions to Dismiss with Regard to Jurisdiction [Fed.R.Civ.P. Rule 12(b)2] ("Plaintiffs' Supplemental Memorandum") at page 3. In light of this admission, we will not consider plaintiff's pre-discovery arguments for general jurisdiction based on defendants' operation of various interactive websites and sales within the Commonwealth of Pennsylvania. (See plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss [Ambient, Fowler, Simoneau, C2, Technical Diving, Silent Diving] at page 6).

17. Plaintiff's Supplemental Memorandum at page 6, citing Affidavit of Stephanie Barrett at paragraph 37.

Plaintiff also argues for the application of the stream-of-commerce analysis applied by the United States Supreme Court in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*. (Plaintiff's Supplemental Memorandum at pages 3–6). We find this analysis inapposite in the present case.

In this case, the Inspiration rebreather was not sold in Pennsylvania. Our situation, therefore, is distinguishable from *Asahi,* in which the Court considered the propriety of finding jurisdiction over a defendant who "benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity." *Asahi,* 480 U.S. 102, 117, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92, 107 (1987)(Brennan, J., concurring).

"have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)).

The Supreme Court further defined the strictures of the Due Process Clause in holding that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). The Third Circuit has described the due process analysis under *International Shoe* and its progeny as a two-pronged test: first, a court must determine whether there are minimum contacts; and second, whether the exercise of jurisdiction comports with "fair play and substantial justice". *Mellon Bank,* 960 F.2d at 1221–22.

█ Specific jurisdiction over a defendant can be found where the suit is related to or "arises out of" the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). In the case of specific jurisdiction, the court's jurisdiction is based on the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683, 698 (1977).

█ In this case, the only contacts plaintiff has established between the defendants and this forum stem from the agreement between Cliff Simoneau and Robert Barrett described in Mrs. Barrett's Affidavit. Her Affidavit sets out the terms and scope of this agreement, which she alleges involved Mr. Barrett serving as an instructor and distributor of the Inspiration for the East Coast.[18]

The facts set out in Mr. Simoneau's Affidavit are in direct conflict with the facts averred by Mrs. Barrett. The Simoneau Affidavit states that he did not offer Mr. Barrett the right to distribute Ambient products because he did not have those rights at the time that the alleged agreement would have taken place. Mr. Simoneau acquired distribution rights through his involvement with Silent Diving, which was formed in 2003 and subsequently acquired the North American distribution rights for Ambient products.[19]

Mr. Simoneau further avers that Robert Barrett was never a C2 affiliate. Mr. Simoneau acknowledges, however, that C2 had the right to purchase a few Inspiration rebreathers from Ambient for divers who took an Inspiration training course through C2.[20]

Even if we resolve the factual dispute in favor of Mrs. Barrett, however, there are not sufficient facts to establish contacts between defendants and this forum. Mrs. Barrett's affidavit outlines a prospective relationship between Ambient, Cliff Simoneau and Robert Barrett in which Ambient products would be sold on the East Coast, including Pennsylvania. However, it is clear from Mrs. Barrett's Affidavit that Mr. Barrett never acted as a distributor or instructor with regard to Ambient products.[21] Indeed, Mr. Barrett had not completed the necessary training to serve as an instructor.[22]

Mrs. Barrett does aver in her Affidavit that Mr. Barrett "persuaded" his friend Dave Bouder to buy an Inspiration rebreather and training course, and that he would have received the commission from this sale but for the fact that the sale was completed after his death. Mrs. Barrett contends that this sale represented Mr. Barrett's first sale pursuant to his agreement with Mr. Simoneau.[23]

█ Assuming that the sale to Mr. Bouder was, in fact, made pursuant to an agreement

---

18. Stephanie Barrett Affidavit, paragraphs 18, 23, 26, 28, 29 and 37.

19. Simoneau Affidavit, paragraphs 7 and 9.

20. Simoneau Affidavit, paragraphs 8 and 10.

21. See Stephanie Barrett Affidavit, paragraphs 18, 26, 28 and 29.

22. Stephanie Barrett Affidavit, paragraph 46.

23. Stephanie Barrett Affidavit, paragraphs 43, 44 and 45.

with Mr. Simoneau, there are still insufficient contacts to find jurisdiction in Pennsylvania. Mr. Bouder is a resident of Maryland.[24] A single sale to a Maryland resident cannot establish that Ambient or any other defendant purposefully availed itself of the privilege of conducting business in Pennsylvania. *See Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.

Because this sale occurred prior to the acquisition of distribution rights from Ambient by Silent Diving, it also cannot establish a broader agreement among the defendants to distribute Ambient products throughout the East Coast. Indeed, Mr. Simoneau's Affidavit states that at this time, C2 had permission to buy "a few" rebreathers from Ambient and that these rebreathers were shipped directly to Canada.[25]

The sale of a very limited number of Inspiration rebreathers, none of which was shipped to any location within the United States, represents the type of isolated occurrences that the Supreme Court has found inadequate to establish jurisdiction. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980).

Plaintiff has alleged additional jurisdictional facts with respect to some of the defendants.[26] However, plaintiff has not provided any additional jurisdictional facts with respect to defendant Ambient that could give rise to specific jurisdiction in this forum.[27] Accordingly, we conclude that plaintiff has failed to sustain her burden of establishing jurisdiction over defendant Ambient.

Because the manufacturer of the allegedly defective device cannot be sued here, we will consider plaintiff's motion to transfer to cure want of jurisdiction. Plaintiff requests transfer if jurisdiction over any of the parties is found to be lacking.[28] Given this request, we believe that determinations regarding whether jurisdiction lies for the remaining six defendants are unnecessary. Accordingly, we will not evaluate the claims of the other defendants contesting jurisdiction.

*Transfer Pursuant to 28 U.S.C. § 1631*

Transfer to cure want of jurisdiction allows the court to transfer a case, "if it is in the interest of justice," to "any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. In this case, plaintiff seeks transfer to the United States District Court for the District of New Hampshire.

Plaintiff contends that in New Hampshire, there would be general jurisdiction over defendants C2, Simoneau, Silent Diving, Ambient and Fowler. Plaintiff argues that specific jurisdiction would lie there for defendants Dolphino's and John Garvin. Finally, plaintiff predicts that neither the Teledyne defendants nor Technical Diving will object to jurisdiction in New Hampshire.[29]

Defendants make several arguments in opposition to transfer. First, defendants assert that indispensable parties, including the Maryland dive buddies (Adam Bress, Michael Seacrest and Sean Baird), Rudi Asseer, John Garvin, O2, Technical Dive International (United Kingdom) and David Crockford cannot be joined in New Hampshire.[30] Further,

**24.** Simoneau Affidavit, paragraph 13.

**25.** Simoneau Affidavit, paragraph 8.

**26.** See Stephanie Barrett Affidavit, paragraph 24 (asserting that Cliff Simoneau went diving with Robert Barrett in Pennsylvania in April 2002); and Susquehanna Police Report at page 8 (describing defendant Fowler's phone call to the Susquehanna Police offering to assist in the investigation of Mr. Barrett's death).

**27.** Plaintiff does assert that defendant Fowler represented defendants Ambient and Simoneau when he traveled to Pennsylvania to assist in the investigation of Mr. Barrett's death. See Amended Verified Complaint, paragraph 112. Howev-

er, because this act occurred after Mr. Barrett's death, it cannot give rise to specific jurisdiction in this action.

**28.** Memorandum of Law in Support of Plaintiff's Motion to Transfer to Cure Want of Jurisdiction Pursuant to 28 U.S.C. 1631 ("Plaintiff's Transfer Memorandum") at page 1.

**29.** Plaintiffs' Transfer Memorandum at pages 2–5.

**30.** Defendants' Memorandum in Opposition to Plaintiff's Motion to Transfer [Ambient, Simoneau, C2, Technical Dive, Silent Diving] ("Ambient Transfer Memorandum") at page 14;

defendant Dolphino's alleges that it is not subject to personal jurisdiction in New Hampshire.[31] Finally, defendants argue that the plaintiff has known that there was no basis for personal jurisdiction in Pennsylvania since she commenced her lawsuit, and that it is therefore contrary to "the interest of justice" to allow her to transfer the case now.[32]

We will begin by addressing the issues raised by defendants regarding the Maryland dive buddies.[33] Defendants contend that the dive buddies are indispensable pursuant to Rule 19. Plaintiffs have not asserted any claims against the dive buddies, who are residents of Maryland and would likely not be subject to personal jurisdiction in New Hampshire. We agree with defendants that if the dive buddies were joined, the rule of complete diversity would be violated and subject matter jurisdiction pursuant to 18 U.S.C. § 1332 would no longer exist.

Rule 19 of the Federal Rules of Civil Procedure governs the joinder of necessary parties. Rule 19 requires that the court conduct a three-part inquiry. First, the court must consider whether the presence of the absentee is required for just adjudication, that is, whether the absentee is "necessary". Next, if the absent party is deemed necessary, the court must consider whether joinder is feasible. If joinder is not feasible, the court then determines whether the litigation can, "in equity and good conscience," continue without the absentee. Moore's Federal Practice 3d § 19.02[3].

■ Determining whether a party is necessary under Rule 19(a) is based on consideration of three interests. Initially, the court considers whether complete relief can be accorded among those already parties without joining the absentee.[34] Next, the court considers whether the absentee has an interest in the litigation and might be unable to protect that interest if he is not joined. Finally, the court considers whether the party's absence might subject the existing parties to double, multiple, or otherwise inconsistent obligations. Fed.R.Civ.P. 19(a).

■ In this case, complete relief can be accorded to those already joined as parties without the presence of the Maryland dive buddies.[35] The nonjoinder of the dive buddies does not foreclose a determination of whether the defendants are liable for selling a defective product, failing to warn the decedent, or providing inadequate instruction.

With respect to the interests of the dive buddies, we find that they do not have any interest in the present litigation that would be impaired or impeded by their absence. The plaintiff has not asserted any claims against the dive buddies. In fact, given that the Pennsylvania statute of limitations has run, it is unlikely that the plaintiff would be able to assert any claims against the dive buddies at this point.[36] Accordingly, we find that the dive buddies' interests are not harmed by their absence.

We also find that the absence of the dive buddies would not subject the existing defendants to a risk of double, multiple or incon-

Memorandum of Law in Opposition to Plaintiff's Motion to Transfer [Teledyne defendants] ("Teledyne Transfer Memorandum") at pages 7, 9.

**31.** Memorandum of Law in Opposition to Plaintiff's Motion to Transfer [Dolphino's] ("Dolphino's Transfer Memorandum") at page 3.

**32.** Ambient Transfer Memorandum at page 2.

**33.** The Maryland dive buddies are three individuals who were scuba diving in the Bainbridge quarry with Robert C. Barrett at the time of his death on August 3, 2002. They are Adam Bress, Michael Seacrest and Sean Baird, each of whom is a resident of Maryland.

**34.** This factor reflects the interest of society in fully deciding the dispute in a single lawsuit. Demonstration of this interest is generally not

sufficient, on its own, to result in a finding that a party is necessary under Rule 19(a). Moore's Federal Practice 3d § 19.03[2][b].

**35.** We note that the United States Court of Appeals for the Third Circuit has interpreted Rule 19(a)(1) narrowly. The Third Circuit has stated that "complete relief" means complete relief for those parties who are already present. Whether the controversy will be entirely settled is not relevant to determination of this factor. *Field v. Volkswagenwerk AG*, 626 F.2d 293, 301 (3d Cir. 1980).

**36.** 42 Pa.C.S.A. § 5524. We make no finding as to which state's statute of limitations will apply in this case.

sistent judgments.[37] Defendants have not provided any arguments to the contrary.

As a result, we conclude that the dive buddies are not necessary parties pursuant to Rule 19(a). Therefore, they cannot be indispensable parties, and their absence, either here or in New Hampshire, provides no grounds for dismissing this case pursuant to Fed.R.Civ.P. 12(b)(7).

■ However, even if we are incorrect, and the dive buddies are "necessary" under Rule 19(a), we find that they are not indispensable under Rule 19(b).[38] Rule 19(b) requires the court to determine whether, "in equity and good conscience," the case may proceed without the absent necessary parties.

Rule 19(b) provides four interests to be weighed by the court in determining the indispensability of the absentees. Fed. R.Civ.P. 19(b). The United States Supreme Court has interpreted the Rule 19(b) interests as including: (1) plaintiff's interest in having a forum; (2) defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for liability shared with another; (3) the interest of the outsider; and (4) the interests of the court and the public in efficiency. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936, 944–945 (1968).

In this case, the fact that there appears to be no alternative forum in which plaintiff can bring her suit weighs against dismissing her case on the ground that the dive buddies are "indispensable". Defendants repeatedly fault plaintiff for selecting an inappropriate forum, yet no defendant has suggested a forum in which all of the parties they argue are necessary could be joined. The forum favored by most of the defendants, the United Kingdom, would seem to preclude joinder of the dive buddies as well.

Defendants' arguments tend to focus on the second factor, however. Defendants contend that they will not be able to adequately defend themselves in the absence of the dive buddies and may be forced to bear sole liability for harm caused or contributed to by the dive buddies.[39]

Although we recognize the concern expressed by defendants, we believe that defendants will, even in the absence of the Maryland dive buddies, be able to present a defense based upon the alleged negligence of the divers. Defendants can present compelling arguments and evidence regarding the actions taken by the dive team even if no liability can be apportioned to the dive buddies.[40]

The interests of the dive buddies are addressed above and do not seem to weigh in favor of finding them indispensable. Because, as stated above, there does not appear to be a forum in which every potential defen-

**37.** Defendants have suggested that subsequent litigation to enforce a judgment against an absent defendant over whom the trial court did not have jurisdiction would present the type of "multiple" litigation sought to be prevented by Rule 19(a). Ambient Motion to Dismiss at page 32. However, multiple litigation is distinct from multiple judgments. Accordingly, we will address defendants' argument on this point below.

**38.** We have already addressed the second inquiry, whether joinder of the dive buddies is possible, above.

**39.** Defendants' Motion to Dismiss Plaintiff's Amended Complaint [the Ambient defendants] at page 32.

**40.** The case law relied upon by the defendants in arguing the liability of the dive buddies is somewhat less helpful than defendants suggest. First, we do not read *Kuntz v. Windjammer "Barefoot" Cruises, Ltd.* as establishing a responsibility of

dive team members to their group. In that case, the district court found an instructor who failed to set up a buddy system for beginner divers to be negligent. *Kuntz*, 573 F.Supp. 1277, 1282 (W.D.Pa.1983).

Similarly, in *Lyon v. The Ranger III* the court did not establish a special duty of care in the context of diving. Rather, the court found that the parties were "joint participants" in the development of a "seriously flawed" dive plan. *Lyon*, 858 F.2d 22, 24–25 (1st Cir.1988). Because each member of the team had control over the dive plan, and could have suggested alternatives, the court found that the deceased diver, Lyon, like his dive team, was 45% negligent. *Lyon*, 858 F.2d at 25. Importantly, the court did not suggest the existence of a special duty of care, nor did it find that one diver would be liable for the actions of another if those actions deviated from the agreed-upon dive plan.

dant could be joined, the interest of the public and the courts in efficiency is also not furthered by dismissing this case.

Accordingly, we find that even if the dive buddies are necessary, they are not indispensable. Therefore, they present no bar to transfer.

Given that the possibility of joinder of any other defendants will depend upon whether they are subject to jurisdiction in New Hampshire, we will not consider whether they are necessary or indispensable. Nor will we consider whether Dolphino's is subject to personal jurisdiction in New Hampshire.

This brings us to defendants' final argument, which addresses the actions taken by plaintiff in this matter. As we noted above, plaintiff faced a difficult jurisdictional problem as she attempted to select a forum. Given that the question of where this suit is best brought could be answered differently by reasonable attorneys, we decline to deny plaintiff's motion to transfer on the basis that she should have anticipated the lack of jurisdiction in this court.[41]

■ Ultimately, we find that transfer is appropriate in this case. At the time that this suit was commenced, it would have been timely in New Hampshire, given that New Hampshire's statute of limitations for tort actions is three years. N.H.Rev.Stat. Ann. § 508:4. Further, given that the same defendants who did not object to jurisdiction in Pennsylvania have not objected to jurisdiction in New Hampshire, we find that the suit could have been brought there. Finally, because it is not clear that plaintiff could bring her suit in another forum if we were to dismiss it, we find that transfer is in the interest of justice.

### CONCLUSION

For all of the foregoing reasons, we grant plaintiff's motion to transfer and dismiss defendants' motions to dismiss without prejudice to raise the same arguments before the

---

41. Defendants cited several cases finding that denial of a motion to transfer is appropriate where plaintiff knew of the jurisdictional deficiency and failed to take action in a timely man-

United States District Court for the District of New Hampshire.

### ORDER

NOW, this 30th day of March, 2006, upon consideration of the following motions:

(1) Defendant's Motion to Dismiss Plaintiff's Amended Complaint, which motion was filed on behalf of Ambient Pressure Diving, Ltd., Silent Diving Systems, LLC, Cliff Simoneau, Michael Fowler, C2 Educational Expeditions and Technical Dive International on May 31, 2005; together with:

Plaintiff's Opposition to the Motion to Dismiss of Defendants, filed on June 22, 2005;

(2) Motion to Dismiss of Defendant Dolphino's Scuba, Inc., which motion was filed June 3, 2005; together with:

Plaintiff's Opposition to the Motion to Dismiss of Defendant Dolphino's Scuba, Inc., filed June 21, 2005;

(3) Motion to Dismiss of Defendants Teledyne Technologies Incorporated and Teledyne Analytical Instruments, which motion was filed June 10, 2005; together with:

Plaintiff's Opposition to the Motion to Dismiss of Defendants, Teledyne Technologies Incorporated and Teledyne Analytical Instruments, filed June 22, 2005; and

(4) Plaintiff's Motion to Transfer to Cure Want of Jurisdiction Pursuant to 28 U.S.C. 1631, which motion was filed August 31, 2005; together with:

(a) Memorandum of Law in Opposition to Plaintiff's Motion to Transfer, filed on behalf of defendants Teledyne Technologies Incorporated and Teledyne Analytical Instruments on September 16, 2005;

(b) Defendants' Memorandum in Opposition to Plaintiff's Motion to Transfer, filed on behalf of defendants Ambient Pressure Diving, Ltd., Si-

---

ner. *See, e.g., Nichols v. G.D. Searle & Co.,* 991 F.2d 1195 (4th Cir.1993); *McFarlane v. Esquire Magazine,* 74 F.3d 1296 (D.C.Cir.1996). We decline to follow that course of action in this case.

lent Diving Systems, LLC, Cliff Simoneau, Michael Fowler, C2 Educational Expeditions and Technical Dive International on September 16, 2005; and

(c) Memorandum of Law in Opposition to Plaintiff's Motion to Transfer, filed on behalf of Dolphino's Scuba, Inc. on September 20, 2005;

upon further consideration of Plaintiff's Supplemental Memorandum in Opposition to All Defendants' Motions to Dismiss with Regard to Jurisdiction [Fed.R.Civ.P. Rule 12(b)2], filed September 1, 2005; after oral argument held September 1, 2005 on the three motions to dismiss; and for the reasons expressed in the accompanying Opinion,

*IT IS ORDERED* that plaintiff's motion to transfer is granted.

*IT IS FURTHER ORDERED* that this case shall be transferred to the United States District Court for the District of New Hampshire.

*IT IS FURTHER ORDERED* that defendants' motions to dismiss are dismissed without prejudice to raise these arguments before the United States District Court for the District of New Hampshire.

